[Filed May 26, 1886.]

## W. S. POWELL ET AL. v. DAYTON, SHERIDAN, AND GRAND RONDE R. R. CO. ET AL.

EQUITY—MISJOINDER OF SUITS—DEMURRER—FRAUDULENT REPRESENTATIONS.—A complaint by a large number of plaintiffs having independent claims against the defendants, which had been secured by a common mortgage in favor of the plaintiffs' trustee, and which, in addition to the allegations showing the liability to the plaintiffs severally, charged that

one of the defendants, who was the attorney for said trustee, made fraudulent representations to the plaintiffs concerning the solvency of their claims, and other material facts of which they were ignorant, and that they were thereby, "by reason of their relations of trust and confidence· in said attorney, and relying upon him," etc., induced severally to assign. their claims to him for much less than their value, and praying to have the assignments set aside and for other relief, does not show such a wrong to the plaintiffs jointly, or as a class, as will protect the complaint against a demurrer for misjoinder of causes of suit.

SAME.—The suit can be maintained if it distinctly appears that the alleged representations were made to the plaintiffs as a class jointly, and acted. upon by them in a collective capacity.

MULTNOMAH COUNTY.  Defendants appeal.  Reversed..

*Ellis G. Hughes*, for Appellants.

To allow these several plaintiffs to join in one suit to· set aside the several assignments made by them would be to allow several plaintiffs having several entirely separate and distinct causes of suit to join in one suit,. simply because all the causes of suit were against one defendant.  Equity never did permit this.  (Story's Eq. Pl., secs. 271, 272, 279; 1 Daniell's Ch. Pl. & Pr., 4th ed., 344; *Yeaton* v. *Lenox*, 7 Pet. 220; *Marselis* v. *Morris Canal Co.*, 1 N. J. Eq. 31–39; *Jones* v. *Garcia Del Rio*, 12 Eng. Ch. 297; *Exeter College* v. *Rowland*, 6 Madd. 66; *Brooks* v. *Whitworth*, 1 Id. 57; *White* v. *Curtis*, 2 Gray, 471; *Bouverie* v. *Prentice*, 1 Bro. C. C. 185.)  The cause of suit against Hughes is to set aside the title he now holds to· the claims they once held, and vest that title in themselves so that they may be present owners.  The cause· of suit against the Oregonian company is to recover· their claims out of the property now held by it.  Joinder· of causes of this kind is not and never was allowable. The decisions are direct, and on facts which in legal. effect are precisely the same as those of this case. (Story's Eq. Pl., secs. 272, 275; 1 Daniell's Ch. Pl. & Pr.,. 4th ed., 339; *Whaley* v. *Dawson*, 2 Sch. & Lef. 366;.

*Bouck* v. *Bouck*, L. R. 2 Eq. 19; *Tasker* v. *Smith*, 3 Myl. & C. 68; *Mole* v. *Smith*, 1 Jacob, 490; *Dimmock* v. *Bixby*, 20 Pick. 368; *Whitten* v. *Whitten*, 36 N. H. 334.) To sustain this complaint would be to allow a joinder in one bill of a joint demand against several defendants with a several demand against one, which is not allowable. (Story's Eq. Pl., sec. 284 b; *Dunn* v. *Dunn*, 2 Sim. 329, 2 Eng. Ch.; *Emans* v. *Emans*, 13 N. J. Eq. 205; *Crane* v. *Fairchild*, 14 Id. 77; *Sawyer* v. *Noble*, 55 Me. 228.) No case can be found, I think, which under the old equity practice would allow a joint suit to set aside the various assignments. Nor has our Code established any different rule as to joinder of parties or causes of action. The provisions of the Code of Oregon are the same as those of the Code of New York, and they are but the adoption of the old equity rules. (Civil Code, sec. 390, p. 191; Moak's Van Santvoord, pp. 76, 77; Bliss on Code Pleading, sec. 72.) The causes of suit which may be united are divided by our Code into six classes, and all must belong to some one of these, and must each and every one of them affect all the parties to the suit. (*Gardner* v. *Ogden*, 22 N. Y. 340; S. C., 78 Am. Dec. 192; *Lexington etc. R. Co.* v. *Goodman*, 25 Barb. 469.) Even then if these plaintiffs could join to have these assignments set aside, and even if the facts alleged showed fraud so as to entitle them to that relief, they could only do so on the return of the amount paid. (1 Addison on Contracts, sec. 312; 2 Id., secs. 640, 645; Story's Eq., secs. 64, 707; 2 Pomeroy's Eq., secs. 897, 916.)

*James K. Kelly* and *E. D. Shattuck*, for Respondents.

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is necessary to a complete determination or settlement of the questions involved therein." (Statutes

of Oregon, sec. 380, p. 190; *Wilson* v. *Castro*, 31 Cal. 421.) That a court of equity has jurisdiction to cancel these assignments, and declare the several plaintiffs to be the owners of the certificates issued to them respectively, we maintain, has been determined by the Supreme Court of Oregon. (*Smith* v. *Griswold*, 6 Or. 440.) The jurisdiction has been exercised in a great variety of cases where the individual claimants were completely separate and distinct, and the only community of interest among them was in the question at issue, and perhaps in the kind of relief, and the single decree has without any difficulty settled the entire controversy, and determined the separate rights and obligations of each individual claimant. (Pomeroy's Eq. Jur., sec. 269, and cases cited; *Cadigan* v. *Brown*, 120 Mass. 493, 495; *Ballou* v. *Inhabitants of Hopkinton*, 4 Gray, 324, 328; *Murray* v. *Hay*, 1 Barb. Ch. 59; S. C., 43 Am. Dec. 773; *Reid* v. *Gifford*, Hopk. 416, 419, 420.)

Thayer, J.   The respondents, consisting of some ninety persons, each having a separate claim, commenced a suit in the court below against the appellants, to obtain satisfaction of their claims.   The following is the substance of their complaint filed therein:

"That the Dayton, Sheridan, and Grand Ronde Railroad Company, in the construction of its railroad, incurred separate debts to each of the eighty-nine separate plaintiffs, in an amount to each which is stated, and that being unable to pay these debts, for the purpose of securing their payment it agreed with the Willamette Valley Railroad Company to, and afterwards did, convey all its property to that company, in consideration that that company would pay, and that company did in consideration of such conveyance assume and agree to pay, the debts due the plaintiffs respectively.

" That, to secure these debts, the Willamette Valley Railroad Company, in June, 1879, made a mortgage to William M. Evans, as trustee, covering all the property which had been conveyed to it by the Dayton, Sheridan, and Grand Ronde Railroad Company, and conditioned for the payment of the several debts due the several plaintiffs, and in accordance with the terms of said mortgage issued and delivered to each separate plaintiff a separate certificate, stating the amount due the several plaintiffs to whom it was issued under the mortgage, on account of and as for a debt due from the Dayton, Sheridan, and Grand Ronde Railroad Company.

" That prior to the fifteenth day of February, 1880, nothing had been paid on these claims. That a short time prior to the day Hughes represented to them that certain other creditors of the Willamette Valley Railroad Company had agreed to accept fifty cents on the dollar in full of their claims, and that the Willamette Valley Railroad Company was insolvent, and that if they did not accept fifty cents on the dollar they would get nothing; and they, relying on these representations, agreed to accept the amount in full, and thereupon Hughes paid them that amount, and they at his request, severally, and each by a separate assignment in writing, transferred their respective claims to him.

" That Hughes was, at the time, director and attorney in fact of the Willamette Valley Railroad Company, and had been employed by William M. Evans, trustee, as his attorney to represent the interests of the plaintiff under the mortgage made to Evans, and Evans having died, was the sole representative of their interests under it, was the owner of the shares of the unpaid capital stock of the Willamette Valley Railroad Company, greater in amount than all its debts and liabilities, and was then under an agreement to purchase and obtain control of the property

of the Willamette Valley Railroad Company, and to sell and deliver the same, and to procure the purchase and delivery of the claims of plaintiffs for the least possible sum, for the joint benefit of himself and other parties then to the plaintiff unknown.

" That the representations made by Hughes as to the insolvency of the Willamette Valley Railroad Company, and of other creditors having agreed to take fifty cents on the dollar for their claims were false; that the money he did pay plaintiffs was not his own, but belonged to parties to whom he had sold the road; that they were ignorant of the facts relative to his sale of the road and to whom he had sold it, and as to his ownership of capital stock, and were at the time, by reason of the relations of trust and confidence in him, relying upon him to protect their interests, and by reason of these matters, Hughes did defraud them of fifty cents on the dollar of their claims, and they are now severally the owners of their several claims with an amount due on each, which is stated.

" That in January, 1879, the Willamette Valley Railroad Company entered into an agreement with the Dayton, Sheridan, and Grand Ronde Railroad Company to buy the property and pay the debts of the latter, and in pursuance thereof, the Dayton, Sheridan, and Grand Ronde Railroad Company, in June, 1879, conveyed all its property to the Willamette Valley Railroad Company, on the terms and in consideration that the latter was to pay all the debts of the former due to plaintiffs, and the Willamette Valley Railroad Company thereupon mortgaged all the property as conveyed to it to William M. Evans, as trustee, in terms to secure payment of amounts due plaintiffs.

" That the Willamette Valley Railroad Company did not pay the claims of plaintiffs. That on the second

day of April, 1880, it conveyed all said property to the
Oregon Railway Company, Limited, and on the eleventh
day of December, 1880, the Oregon Railway Company,
Limited, conveyed the same property to the Oregonian
Railway Company, Limited, who now has it, and at the
time of these conveyances both these latter companies
had full notice of the execution, purpose, intent, and
terms of the deed of the Dayton, Sheridan, and Grand
Ronde Railroad Company to the Willamette Valley Rail-
road Company, and of the mortgage of the Willamette
Valley Railroad Company to William M. Evans.

"And for further and separate cause of suit:

"That on and prior to the twenty-ninth day of De-
cember, 1879, Joseph Gaston was the owner of $500,000
worth of the stock of the Willamette Valley Railroad
Company, which was wholly unpaid, and on that day he
voluntarily transferred it to the defendant Hughes, to be
by him tranferred to such corporation as might thereafter
be organized to take and pay for the same.

"That on the twentieth day of February, 1880, the
Oregon Railway Company, Limited, was incorporated
under the laws of Oregon for the purpose of receiving
a transfer of the property of the Willamette Valley Rail-
road Company, and taking the Gaston stock and holding
it in trust for the Oregonian Railway Company, Limited,
then about to be organized in Scotland, and it purchased
the property of the Willamette Valley Railroad Company
from it and Gaston's stock from him at the same time,
as the agent and trustee of the Oregonian Railway Com-
pany, Limited, and on the eleventh day of December,
1880, it conveyed the legal title to the property and the
equitable title to the stock to that company.

"That Hughes never paid anything on the stock, and
he conveyed the legal title thereto to the Oregonian Rail-
way Company on the twenty-seventh day of February,
1884.

"That the Oregonian .Railway Company never paid anything on the stock, but holds the same as a trust fund for the payment of the claims of the plaintiffs and other creditors of the Willamette Valley Railroad Company.

"That since the second day of April, 1880, the Willamette Valley Railroad Company has been, and now is, wholly insolvent.

"The prayer is: 1. That the assignments to Hughes may be set aside, and the several plaintiffs be decreed to be owners of their respective several claims, and entitled to recover the amount due thereon from the Willamette Valley Railroad Company.

"2. That the Oregonian Railway Company, Limited, as holding the property impressed with a trust, may be decreed to pay plaintiff's claims.

"3. That the Oregonian Railway Company, Limited, may be decreed to pay plaintiff's claims as the owner of the unpaid stock of the Willamette Valley Railroad Company.

"4. That if the Oregonian Railway Company, Limited, does not pay, defendant Hughes may be decreed to pay as the one-time owner of the stock."

The respondents, Hughes and the Oregonian Railway Company, filed a demurrer to the complaint upon about every ground known to the Code and former equitable practice, but the main one is that several causes of suit are improperly united. That is about the only ground that can be considered tenable, and it is not at all clear that that one is. A misjoinder of parties is no ground for demurrer, nor that the statute of limitations has run upon the claim in suit, unless the full period necessary to constitute a bar has elapsed. Though a delay for a long time to commence a suit is often considered by the court as an unfavorable circum-

stance to the granting relief, even when it is brought within the period of limitation.

Nor is there any difficult question in regard to the facts contained in the complaint constituting a cause of suit. But the right to unite the respondent's various claims as against Hughes in one suit is questionable. It certainly does not exist, unless in the transaction in which he obtained their several claims, as charged in the complaint, he dealt with them as a class or jointly. If he bought the claims from each separately, and made the representations it is alleged he did to them separately, they could no more unite the claims in one suit against him than they could any other distinct torts against a wrong-doer. It would not be like a case where one act affects several persons, like a common nuisance, or like a case where a party erect a dam upon a stream of water, and thereby floods the lands of a number of distinct proprietors. There, one wrong injures several; but in the case first suggested, there would be as many wrongs as there were parties wronged. The purchase from each claimant and representations to him would be a distinct wrong. If, therefore, the alleged false representations were made to each of the respondents, and acted upon by each, they could no more unite their claims than they could unite assaults and batteries committed upon each of them. There are, however, features in the case that would indicate that the representations alleged might have been made to the respondents as a class jointly, and acted upon by them in a collective capacity; though it is not specifically alleged that such was the case. We think, however, that they should have the opportunity to make their complaint more definite and certain upon that point. Whether such is the fact or not, we of course do not know; but if it does exist, the claims sued upon can, and ought to be, united in one suit. Other-

wise the respondents may as well elect at once to proceed separately, for it must be shown that there was some privity or concurrence between them in the matter with Hughes, in order to entitle them to join in the suit.

There is another infirmity in the complaint, which we call the attention of the respondent's counsel to, although it may not be a fatal defect. It does not appear who "the other parties then to plaintiffs unknown" were. It was hinted upon the argument that they were the promoters of the Oregonian Railway Company; but we are unable to find any allegation in the complaint to that effect. We are induced to send the case back, to some extent, by the fact that we should send it back any way. The case is too important to be determined upon demurrer, and the appellants would have been allowed to answer over, if the decision of the lower court had been affirmed. We have therefore concluded to reverse the decree appealed from, remand the case, with leave to the respondents to amend their complaint, and require each party to pay half the costs of the appeal, as the hearing has benefited each of them equally. The parties will then be able to make up their issues, and if the case should come here again, it can come upon the proofs.