## STATE ex rel. *v.* RICHARDSON.

85 Pac. 225.

MANDAMUS—POWER TO ALLOW AMENDMENT—DISCRETION.

1. Under the provision of Section 612, B. & C. Comp., concerning the amendment of pleadings in mandamus proceedings, the trial court has a wide discretion, and its action in granting or refusing an amendment while the cause is in the trial court will not ordinarily be disturbed.

EVIDENCE—JUDICIAL NOTICE OF PRIOR HEARING.

2. Courts will take judicial notice of information acquired at previous hearings of the same cause, whether on the present or a prior appeal.

APPEAL—REMANDING EQUITY SUITS—AMENDMENTS.

3. It is discretionary with the supreme court in equity to either decide a case finally or to send it back for further proceedings when the appeal has been taken on the pleadings or when the evidence is unsatisfactory on material points, and in such cases the trial court may, in its discretion, permit amendments to the pleadings after the cause has been remanded.

APPEAL—REMANDING LAW ACTIONS—AMENDMENTS.

4. When a judgment in a law action is reversed on appeal, and the cause remanded for a new trial or for further proceedings, the court below possesses power to allow reasonable amendments to be made to the pleadings, and its action in this respect will not be disturbed, except for an abuse of discretion.

APPEAL—MANDAMUS—AMENDING AFTER REVERSAL.

5. Where a judgment sustaining a demurrer to an alternative writ of mandamus and dismissing the proceeding is affirmed on appeal and the cause remanded with a direction to enter a judgment accordingly, the power of the trial court to permit amendments still remains, and the rule is applicable to law actions generally.

PLEADING—STRIKING OUT.

6. It is not error to strike out duplicate averments, for the evidence to support them may still be offered under other paragraphs.

CONSTITUTIONAL LAW—SPECIAL PRIVILEGES OR IMMUNITIES—VALIDITY
OF LOCAL OPTION LAW.

7. The Oregon local option law (Laws 1905, pp. 41, 47, c. 2), is not unconstitutional as in violation of Const. Or. Art I, § 20, for its does not grant any special privileges or immunities whatever, though it may incidentally deny to some persons the right previously enjoyed of selling liquors as a beverage.

CONSTITUTIONAL RIGHT TO SELL LIQUORS.

8. The privilege of selling intoxicating liquors as a beverage is not a common right of American citizenship protected by the Fourteenth Amendment to the Constitution of the United States.

CONSTITUTIONAL GUARANTY OF RIGHT OF SUFFRAGE.

9. The Oregon local option act (Laws 1905, pp. 41, 47, c. 2) is not violative of Const. Or. Art. II, § 1, protecting free and equal electoral rights, for no qualified elector is thereby prevented from freely voting at any election or deprived of having his vote counted as cast, so neither freedom nor equality is affected.

INTOXICATING LIQUORS—DUTY OF COUNTY COURT IN DECLARING RESULT
OF LOCAL OPTION ELECTION.

10. The duty required of the county court by the local option law as to declaring the result of an election (Laws 1905, pp. 41, 47, c. 2, § 10),

and forbidding the sale of liquors as a beverage within the prescribed limits, is ministerial rather than judicial.

CONSTITUTIONAL LAW—JURISDICTION OF COUNTY COURT.

11. The local option act (Laws 1905, pp. 41, 47, c. 2, § 10) in requiring county courts to declare the results of local option elections, is not in violation of Const. Or. Art VII, § 12, providing that county courts shall have probate jurisdiction and "such other duties as may be prescribed by law," for the duty of so declaring the results is one that may properly be imposed by law under the section quoted.

LOCAL OPTION—MANDAMUS ON COUNTY COURT.

12. Mandamus will lie to compel a county court to declare the result of a vote under the local option act as required ·by Section 10, as the act required does not involve the exercise of either discretion or judgment, being entirely ministerial.

STATUTES—TITLE OF INITIATIVE ACT MUST EXPRESS SUBJECT.

13. The validity of laws adopted at the polls pursuant to an initiative petition, under Const. Or. Art. IV, § 1, must be tested by the constitution like legislative laws, and such laws are subject to the requirement of Const. Or. Art. IV, § 20, as to subjects and title.

STATUTES—SUFFICIENCY OF TITLE OF LOCAL OPTION ACT.

14. The title of the local option law adopted by the people at the polls (Laws 1905, pp. 41, 47, c. 2) fairly expresses the subject of the act and sufficiently indicates the additional matters therewith connected, as required by Const. Or. Art. IV, § 20.

From Malheur: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MOORE.

This is a special proceeding, instituted by the State of Oregon, on the relation of W. L. Gibson and others, against B. C. Richardson, as county judge of Malheur County, and G. W. Blanton and G. B. Glover, as commissioners thereof, to compel them as the county court of that county to declare the result of an election held therein, November 8, 1904, to determine whether the sale of intoxicating liquors as a beverage should be prohibited in Nyssa Precinct in that county. At a former trial of this cause, a judgment dismissing the proceedings was affirmed (*State ex rel.* v. *Malheur County Court,* 46 Or. 519, 81 Pac. 368), and on the return of the mandate the relators, over objection, secured an amended alternative writ of mandamus, showing an alleged legal right in themselves to have the act hereinbefore specified performed. The answer of the defendant Richardson states that at all times since the votes so cast were canvassed he has been and now is ready, willing and anxious to make the order which is sought to be enforced,

but that his codefendants were opposed thereto.  The answer
of the defendants Blanton and Glover denies the material alle-
gations of the amended alternative writ, and for a further
defense thereto sets out the several steps attempted to be taken
pursuant to the provisions of the local option liquor law, and
alleges wherein such proceedings failed to comply therewith, in
consequence of which defects they were absolved from perform-
ing the duty resulting from their office.  For a further defense
it is alleged that the local option act contravenes certain clauses
of the constitution of this State.  The court, upon motion,
struck out all the averments of the first affirmative defense,
except the allegations that the notices of election were not
printed until within 16 days prior to November 8, 1904, and
that neither the sheriff nor the county clerk of Malheur County
ever entered in the records thereof their compliance with the
provisions of the local option law, respecting the issuing of
notices or the posting thereof.  The court also sustained a
demurrer to the second affirmative defense, relating to the vio-
lation of the clauses of the organic law of this State by the
adoption of the act in question.  A reply put in issue the
remaining allegations of new matter, and, the cause having
been tried, the court made findings of fact and of law, as stated
in the amended alternative writ, and thereupon allowed a per-
emptory mandamus, from which judgment the defendants
Blanton and Glover appeal.                    AFFIRMED.

For appellants there was a brief and an oral argument by
*Mr. George Wesley Hayes.*

For the State there was a brief over the name of *Cyrus Milton
Van Pelt*, with oral arguments by *Mr. Van Pelt* and *Mr. George
Frederick Martin.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended by defendants' counsel that, as no further
proceedings were ordered in remanding the cause on the former
appeal, the court erred in permitting, over objection, the alter-
native writ of mandamus to be amended.  In the early practice,
when some particular act was sought to be enforced, a mere

letter from the sovereign power was issued, addressed to the person upon whom the duty devolved, commanding him to perform it. No return was originally allowed to the order, a disobedience of which subjected the offender to punishment. As mandatory proceedings became more general, the common-law courts, relaxing the ancient rule, permitted a return to the writ, which had taken the place of the king's letter; but the facts therein stated could not be traversed. If the return, though false, disclosed an adequate legal reason for not performing the act commanded, the proceedings were dismissed, and the petitioner's remedy was thereupon limited to the maintenance of an action to recover the damages which he had sustained by reason of the sham statement. A return was first permitted to be traversed by St. 9 Anne, c. 20, in cases involving a contest for a municipal office, and later the facts so stated were allowed to be controverted in all cases by St. 1 Wm. IV. c. 21, thereby avoiding the necessity of bringing an action for a false return. Pursuant to the rules governing the early practice in mandamus proceedings, any mistake therein of substance was fatal and could not be corrected; but after the passage of the statutes mentioned the rigor of the ancient mode of procedure was abated, so as to allow amendments to the alternative writ, when by doing so justice would be promoted, provided no new or different cause of action was thereby substituted, and this modern rule now generally prevails in this country: Merrill, Mandamus, §§ 5, 293, 294. Though the courts will not ordinarily permit a peremptory writ of mandamus to be altered (High, Ex. Legal Rem. § 519), the practice of amending an alternative writ thereof, provided no new or different cause is thereby stated, is quite general: 13 Enc. Pl. & Pr. 753; *State* v. *Gibbs,* 13 Fla. 55 (7 Am. Rep. 233); *State* v. *Bailey,* 7 Iowa, 390; *Union Pacific Ry. Co.* v. *Hall,* 91 U. S. 343 (23 L. Ed. 428).

1. The statute of this State, recognizing the wisdom of the rule thus outlined, prescribes what shall constitute the pleadings in mandamus proceedings, and, referring thereto, contains the following provision:

"They are to have the same effect and to be construed, and

may be amended in the same manner, as pleadings in an action. Either party may move to strike out, or be allowed to plead over after motion or demurrer allowed or disallowed, and the issue joined shall be tried and the further proceedings thereon had in like manner and with like effect as in an action": B. & C. Comp. § 612.

These liberal provisions authorize an amendment of an alternative writ of mandamus while the cause remains in the trial court, and its action in granting leave so to amend is a matter wholly within its discretion, which will not be disturbed, except in cases of an abuse thereof: *Highway Commissioners* v. *People,* 38 Ill. 347; *Stevens* v. *Miller,* 3 Kan. App. 192 (43 Pac. 439).

2. Our statute regulating the practice on appeal provides that, in affirming or reversing a judgment, this court may, if necessary and proper, order a new trial: B. & C. Comp. § 556. Observing the rule that a court will take judicial knowledge of the facts which it has acquired at a prior hearing of the cause (16 Cyc. 851; *Mills' Estate,* 40 Or. 424, 67 Pac. 107), we have examined the record pertaining to the order affirming the judgment on the former appeal and find that it concludes as follows:

"It is further ordered that the cause be remanded to the said court below, and that a judgment be there entered and docketed in accordance herewith."

3. Does the language here quoted show such a final disposition of the cause as to preclude the trial court from allowing the alternative writ to be amended? In *Powell* v. *Dayton, S. & G. R. Co.* 13 Or. 446 (11 Pac. 222), a demurrer to the complaint therein was overruled, and the defendants appealed. In disposing of the cause, Mr. Justice THAYER says: "The case is too important to be determined upon demurrer, and the appellants would have been allowed to answer over it, if the decision of the lower court had been affirmed. We have therefore concluded to reverse the decree appealed from and remand the case with leave to the respondents to amend their complaint." The remittitur having been sent down, the plaintiffs filed an amended complaint to which a demurrer was interposed and overruled, whereupon the defendants again appealed (s. c. 14

Or. 22, 12 Pac. 83), their counsel insisting that, in case the decision of the lower court was sustained, their clients should be given leave to answer over. In disposing of such contention, Mr. Justice STRAHAN, after referring to the former practice in this court in such cases, remarks: "We therefore announce it as a rule of practice in such cases that whenever this court does not make a final disposition of the cause, but remands the same to the court below, it will be open for that court to determine in the first instance whether the defendant shall be permitted to answer or not." In *Fowle* v. *House,* 29 Or. 114 (44 Pac. 692), which was a suit to enforce a mortgage, a demurrer to the complaint was sustained, and the suit dismissed, whereupon the plaintiff appealed. At the trial in this court the complaint was found to be insufficient, and the decree affirmed. The mandate having been sent down, the motion of plaintiff's counsel to recall it was denied (s. c. 30 Or. 305, 47 Pac. 787), because the cause was remanded for further proceedings.

It will be observed that the cases adverted to were suits which were dismissed because the complaints were respectively held to be insufficient on demurrer. An appeal in equity from a decree rendered on an issue of fact brings up the cause for trial anew in this court upon the transcript and evidence accompanying it (B. & C. Comp. § 555), and a final decree in such cases is usually rendered in this court. A mandate is thereupon sent to the court below, to be entered, however, as our decree, and not as that of the court *a quo.* When, on appeal from a decree in equity, the cause is sent back because the complaint is considered insufficient or the evidence inadequate to support a material averment, no final decree is rendered in this court, except to set aside the decree of the court below and to require further proceedings to be had therein. The rule, therefore, as promulgated in *Powell* v. *Dayton, S. & G. R. Ry. Co.* 13 Or. 446 (11 Pac. 222), applies only to suits in equity.

4. Appeals in law actions are tried in this court on bills of exceptions, disclosing alleged errors set out in the transcript (B. & C. Comp. § 555), and the conclusion here reached is, when remitted, entered in the court below as its judgment.

When a judgment, rendered on an issue of fact in a law action, is reversed on appeal, a new trial is generally ordered, unless the court below should have sustained a motion for a judgment of nonsuit, because of an entire lack of evidence: *Durbin* v. *Oregon Ry. & Nav. Co.* 17 Or. 5 (17 Pac. 5, 11 Am. St. Rep. 778); *McPherson* v. *Pacific Bridge Co.* 20 Or. 486 (26 Pac. 560); *Coughtry* v. *Willamette St. Ry. Co.* 21 Or. 245 (27 Pac. 1031); *Eastman* v. *Monastes,* 32 Or. 291 (51 Pac. 1095, 67 Am. St. Rep. 531); *Abbot* v. *Oregon Railroad Co.* 46 Or. 549 (80 Pac. 1012, 1 L. R. A., N. S., 851, 39 Am. & Eng. R. Cas., N. S., 52). A reversal of the judgment in each of the cases last cited was a final disposition of the cause. Where, however, a judgment in a law action is reversed on appeal, and the cause is remanded for a new trial or for further proceedings, the court below possesses power to allow reasonable amendments to be made to the pleadings, and its action in this respect will not be disturbed, except for an abuse of discretion: *Henderson* v. *Morris,* 5 Or. 24; *Baldock* v. *Atwood,* 21 Or. 73 (26 Pac. 1058); *Talbot* v. *Garretson,* 31 Or. 256 (49 Pac. 978); *Lieuallen* v. *Mosgrove,* 37 Or. 446 (61 Pac. 1022); *York* v. *Nash,* 42 Or. 321 (71 Pac. 59).

5. A demurrer to a complaint interposes an issue of law, the determination of which constitutes a trial by a court: B. & C. Comp. § 114; *Hume* v. *Woodruff,* 26 Or. 373 (38 Pac. 191). When such a trial results in sustaining a demurrer, and the plaintiff declines to amend the complaint, in consequence of which a judgment is rendered against him, and he appeals, an affirmance of the judgment leaves nothing further to be considered, and hence, the ordering of a new trial, as prescribed by statute (B. & C. Comp. § 556), would be useless. When a judgment or decree given under such circumstances is affirmed on appeal, and the cause is remanded, if the plaintiff seeks to correct his error by amending the complaint, his payment of or responsibility for the costs and disbursements incurred should be a sufficient punishment for his mistake, and his application so to amend ought to be allowed, if it is reasonable and meets the approval of the trial court. We believe that a fair inter-

pretation of the rules of practice prevailing in this State authorized the court to allow the alternative writ of mandamus to be amended, in permitting which no error was committed.

6. Considering the case on its merits, no exceptions were taken to the findings, nor was any request made for any other decision upon a question of fact, and as the findings made by the court show a compliance with the requirements of the several provisions of the local option act, thereby supporting the judgment rendered, the only questions to be considered are the action of the court in striking out parts of the answer, and in sustaining a demurrer to the other parts thereof. The averments which were struck out are lengthy, and an examination of them convinces us that no error was committed in their elimination, for evidence of the facts thus stated could have been admitted under the remaining allegations, and hence the new matter so set out will not be detailed.

7. It is insisted by defendants' counsel that the local option law violates Section 20, Art. I of the constitution of this State, which is as follows:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens"—

and that, having sought to raise this and other constitutional questions by averments of new matter in the answer, an error was committed in sustaining the demurrer interposed thereto. An examination of the provisions of the act in question fails to show that any privileges or immunities are attempted to be granted thereby. The law, when put into operation, may deny to some persons rights theretofore enjoyed, of selling intoxicating liquors as a beverage; but the act does not grant any special privileges or immunities to any citizen or class of citizens.

8. If it did, however, it would not contravene common right, because the sale of such liquors for the purpose specified is not a privilege guaranteed to the citizens of the United States:*
*Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642).

*NOTE.—This is a reference to the rights protected by the Fourteenth Amendment to the Constitution of the United States.    REPORTER.

9. It is maintained that the act under consideration is violative of Section 1, Art. II, of the organic law of the State, which is as follows:

"All elections shall be free and equal."

No qualified elector was prevented by any means whatever, so far as disclosed by the transcript, from freely voting to adopt or reject the local option law, or deprived of having his vote counted as cast, and if he exercised the right of suffrage on this particular occasion, his opportunity was equal to that of all other persons voting, and hence the act does not contravene the clause of the constitution invoked to defeat it: 10 Am. & Eng. Enc. Law (2 ed.), 583.

10. It is insisted that Section 10 of the act (Laws 1905, p. 47, c. 2) violates Subdivision 3 of Section 23 of Art. IV of the Constitution of Oregon, which is as follows:

"The legislative assembly shall not pass special or local laws in any of the following enumerated cases, that is to say: * * (3) Regulating the practice in courts of justice"—

and that it contravenes Sections 1 and 12, Art. VII of the fundamental law of the State, which, so far as involved herein, are as follows, respectively:

"1. The judicial power of the State shall be vested in a * * county court * * having general jurisdiction, to be defined, limited, and regulated by law, in accordance with this constitution.

12. The county court shall have the jurisdiction pertaining to probate courts, and boards of county commissioners, and such other powers and duties, and such civil jurisdiction not exceeding the amount of value of five hundred dollars, and such criminal jurisdiction not extending to death or imprisonment in the penitentiary, as may be prescribed by law. But the legislative assembly may provide for the election of two commissioners to sit with the county judge, whilst transacting county business in any or all the counties, or may provide a separate board for transacting such business."

The section of the act thus challenged requires the county court, if a majority of the votes cast in an entire county, or in any subdivision thereof as a whole, or in any precinct, at an election called for that purpose, be in favor of prohibition, to

make an order declaring the result of such vote and absolutely prohibiting the sale of intoxicating liquors as a beverage within the prescribed limits. It will be observed that this section makes the declaration of the result of a majority vote for prohibition and the interdiction of the sale of intoxicating liquors as a beverage in pursuance thereof, by the county court, a ministerial act: *State ex rel.* v. *Malheur County Court,* 46 Or. 519 (81 Pac. 368).

11. We think the part of Section 12, Art. VII of the constitution which vests the county court with "such other powers and duties * * as may be prescribed by law,". requires such court to perform the obligation thus imposed upon it by Section 10 of the act, in the discharge of which it exercises neither discretion nor judgment.

12. We conclude, therefore, that mandamus lies to compel a compliance with the requirements of this clause of the act.

13. It is contended that the title of the local option act contravenes Section 20 of Art. IV of the Constitution of Oregon, which, so far as deemed important, is as follows:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title."

It is argued that the title of the act in question implies an intention on the part of the framers of the statute that it should be local in its operation, so that qualified electors in each community could, for themselves, determine whether or not the sale of intoxicating liquors as a beverage should be prohibited therein, and that no intimation is given in the inscription of the act that an aggregation of precincts in which, as a whole, a majority of the voters who were in favor thereof could impose prohibition upon a precinct in which a majority of the qualified electors was opposed thereto. The object of the constitutional inhibition in question is to prevent matters wholly foreign to the subject-matter specified in the title from being inserted in the body of the act: *Simpson* v. *Bailey,* 3 Or. 515; *McWhirter* v. *Brainard,* 5 Or. 426. In laws proposed by initiative petitions pursuant to an amendment of our consti-

tution, it would seem that the method frequently adopted by members of the legislature of securing votes for the passage of a bill by promises of reciprocal support of other measures could not be pursued, and hence one of the reasons assigned for requiring every bill introduced in the legislative assembly to comply with the requirement of Section 20, Art. IV, of the organic act of the State, so that it may stand on its own merits, the purpose of which, to be valid, must be fairly disclosed in the title, would have no application to the consideration of an act which, like the local option law, resulted from a vote of the people. The validity of laws adopted at the polls must be determined like enactments by the legislative assembly, by the test of the constitution as modified by the amendment thereto. Though the argument that a proposed measure must depend upon its own merits may not apply to acts initiated by petitions, a valid reason for requiring that the subject-matter of laws to be adopted or rejected at the polls should be stated in the title nevertheless exists. The majority of qualified electors are so much interested in managing their own affairs that they have no time carefully to consider measures affecting the general public. A great number of voters undoubtedly have a superficial knowledge of proposed laws to be voted upon, which is derived from newspaper comments or from conversation with their associates. We think the assertion may safely be ventured that it is only the few persons who earnestly favor or zealously oppose the passage of a proposed law initiated by petition who have attentively studied its contents and know how it will probably affect their private interests. The greater number of voters do not possess this information and usually derive their knowledge of the contents of a proposed law from an inspection of the title thereof, which is sometimes secured only from the very meager details afforded by a ballot which is examined in an election booth preparatory to exercising the right of suffrage. It is important, therefore, that the title to laws proposed in the manner indicated should strictly comply with the constitutional requirement.

14. An examination of the provisions of the act under con-

sideration shows an evident intent to make a county the utmost limit and a precinct the smallest territory in which the local option law may be put into operation, and, as the greater necessarily includes the less, a majority vote in the entire county in favor of prohibition, when carried into effect, prevents the sale of intoxicating liquors as a beverage in any precinct therein, though a majority of the qualified electors in such precinct may have voted against the law. Between these extremes of territory another district may be created which is known as a subdivision of a county, composed of two or more entire and contiguous precincts, and the adoption of local option in a subdivision as a whole, when declared as such by the county court, necessarily puts the law into operation in each precinct forming an integral part of the subdivision, though a majority of the votes cast in one of the precincts embraced therein may have been opposed to prohibition. In an election held in a county as a whole, or in a subdivision thereof, if any precinct embraced therein cast a majority vote in favor of prohibition, though a majority of the votes cast in the other parts of the territory may be against interdiction, the provisions of the act are required to be enforced in the precinct in which a majority vote was cast in favor thereof: Laws 1905, pp. 41, 47, c. 2, §§ 1 and 10. The title in question, so far as it relates to the objection urged, is as follows:

"An act to propose by initiative petition a law providing for election in any county, or any precinct therein, or any subdivision of a county, consisting of any number of entire and contiguous precincts of such county, to determine whether the sale of intoxicating liquors shall be prohibited in such county or subdivision thereof or in such precinct, * * declaring what shall constitute a subdivision of the county within the meaning of this law, * * providing for the issuance by the county court of orders prohibiting the sale of intoxicating liquors within certain limits and declaring the duties of such courts in reference thereto."

We think the title is a fair index of the subject-matter of the act, and that the last clause of the inscription quoted is sufficient to call attention to and give adequate notice of the

provisions of the law making it applicable to the territory specified under the particular circumstances hereinbefore mentioned.

Believing that no error was committed as alleged, the judgment should be affirmed, and it is so ordered.

AFFIRMED.

Decided 21 August, 1906.