Argued October 5, affirmed October 10, 1950

# STATE ex rel. *v.* NEWBRY et al.
## 222 P. (2d) 737

*Alex. G. Barry,* of Portland, argued the cause and filed a brief for appellant.

*Cecil H. Quesseth,* Assistant Attorney General, argued the cause for respondent Earl T. Newbry, Secretary of State. With him on the brief were George Neuner, Attorney General, and Robert R. Carney, Assistant Attorney General.

*Henry A. Buehner,* of Portland, argued the cause for respondent Committee for Balanced Apportionment, an unincorporated organization, and Another. With him on the brief were Charles K. McColloch and Donald V. McCallum, both of Baker.

Before LUSK, Chief Justice, and ROSSMAN, HAY, LATOURETTE, and WARNER, Justices.

HAY, J.

Article IV of the constitution of the state of Oregon is the framework of the legislative department of the state government. On February 20, 1950, Committee for Balanced Apportionment, an unincorporated association, filed with the secretary of state an

initiative petition for a proposed constitutional amendment to sections 2, 4, and 6 of said article IV. By the proposed amendment, the number of senators is to be increased from thirty to thirty-six, the present method of apportionment and of determining the ratio of senators and representatives to population is to be changed, provision is made for reapportionment by the legislative assembly to conform to changes in population as shown from time to time by the federal census, and, in the event that the legislative assembly fails to act, such reapportionment is required to be made by the secretary of state. For the purposes of the present case, a more detailed statement of the proposed amendment is unnecessary. Cf. *Dodd v. Neuner, Attorney General, et al.*, 188 Or. 510, 216 P. 2d 670.

This suit was instituted by the state upon the relation of Edward O. Stadter, Jr., district attorney for Marion County, against the Honorable Earl T. Newbry, secretary of state, and the above named sponsors of the proposed constitutional amendment. The complaint alleges that the proposed amendment is legally insufficient, in that, in violation of article XVII of the state constitution, it combines as one amendment what are in fact three amendments, viz., an amendment to increase the membership of the senate, an amendment to change the term of office of some members of the senate, and an amendment to reapportion the legislature. Plaintiff seeks a mandatory injunction restraining the secretary of state from certifying the proposed initiative petition to the several county clerks, and from submitting it to the voters of the state for their approval or rejection at the regular general election to be held on November 7, 1950, or, in the alternative, directing the secretary of state to cause the ballot

title to be so prepared that the three allegedly separate amendments may be voted upon separately.

The defendant secretary of state demurred to the complaint on these grounds: (1) The court had no jurisdiction of the subject of the suit; (2) the complaint did not state facts sufficient to constitute a cause of suit. The other defendants demurred on similar grounds. The court sustained both demurrers, and, the plaintiff having declined to plead further, entered its decree dismissing the suit. Plaintiff appeals. He assigns as error the sustaining of the defendants' demurrers, and, specifically, the court's rulings that the proposed initiative petition was legally sufficient and that the court had "no authority to require the secretary of state to divide the provisions into various forms on the ballot".

Originally, amendments to the state constitution were effected by being approved, in two successive sessions of the legislative assembly, by a majority vote of both houses, ratified thereafter by a majority vote of the electors of the state. In 1902, under a referendum, the people amended article IV, section 1 of the constitution, by reserving to themselves the power "to propose laws and amendments to the constitution and to enact or reject the same at the polls, independent of the legislative assembly, * * *".

As published in Deady's General Laws of Oregon, 1845-1864, article XVII contains the following:

"Sec. 2. *If two or more amendments shall be submitted in such manner, that the electors shall vote for or against each of such amendments separately*; and while an amendment or amendments which shall have been agreed upon by one legislative assembly shall be awaiting the action of a legislative assembly, or of the electors, no additional amendment or amendments shall be proposed."

The same language appears in Deady and Lane, General Laws of Oregon, 1843-1872; Hill's Annotated Laws of Oregon, Vol. 1, 1887; Hill's Annotated Laws of Oregon, 2nd Ed., Vol. 1, 1892; and Bellinger and Cotton's Annotated Codes and Statutes of Oregon, Vol. 1. By the amendment the portion of § 2, article XVII, italicized above, was made to read as follows:

"* * * When two or more amendments shall be submitted in the manner aforesaid to the voters of this state, at the same election, they shall be so submitted that each amendment shall be voted on separately."

The 1906 amendment provided further that the votes of the electors upon proposed amendments to the constitution should be canvassed "severally", whether such amendments should be proposed by the legislative assembly or by initiative petition.

Plaintiff's principal contention upon this appeal is that the initiative petition submits three proposed constitutional amendments in the form of one amendment, so that electors, if they vote thereon at all, will of necessity be obliged to accept or reject all three. This, he insists, is a violation of the constitutional provision last above quoted. The question, if it is actually before us for consideration in the present suit, "is one not to be lightly resolved." *State ex rel. Johnson v. Farrell,* 175 Or. 87, 91, 151 P. 2nd 636.

Section 81-2105, O. C. L. A., as amended by chapter 85, Oregon Laws 1945, provides, in part, as follows:

"If the secretary of state shall refuse to accept and file any petition for the initiative or for the referendum any citizen may apply, within ten days after such refusal, to the circuit court for a writ of mandamus to compel him to do so. If it shall be decided by the court that such petition is legally sufficient, the secretary of state shall then file it,

with a certified copy of the judgment attached thereto, as of the date on which it was originally offered for filing in his office. On a showing that any petition filed is not legally sufficient, the court may enjoin the secretary of state and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure. * * *"

The defendants suggest that the legal sufficiency of the petition is to be determined solely by whether or not it complies with the procedure provided by law for the exercise of the initiative powers. §§ 81-2101 to 81-2120, inc., O. C. L. A. They cite, in this connection, *State ex rel. Carson v. Kozer*, 126 Or. 641, 270 P. 513. That suit was instituted by the State Highway Commission to enjoin the defendant Secretary of State from certifying and printing upon the official election ballot the ballot title and numbers of a proposed initiative measure to amend the Motor Vehicle Law. The complaint alleged that, while the petition contained the requisite number of signatures, was properly verified, and was in proper form, the proposed measure, if enacted into law, would be unconstitutional and void, in that it was not plainly worded, was loosely and imperfectly drawn, and its meaning was obscure and uncertain. The defendant's demurrer to the complaint was sustained, and on appeal this court affirmed. We held that §§ 4095-4112, Or. L. (now §§ 81-2101 to 81-2120, inc., O. C. L. A.), were the measure of the court's authority to control the actions of the secretary of state in respect of initiative and referendum matters.

We said, in part:

"Where an initiative petition has been filed in the office of the Secretary of State, is in proper form, properly verified, contains the requisite number of signatures and shows upon its face that all

of the statutory directions entitling it to be filed have been complied with, the statute makes it the imperative duty of the Secretary of State to file the petition and, upon its being filed, to certify and print the ballot title and numbers on the official ballot so that it can be voted upon. * * *

"* * * it would seem to follow as a necessary consequence, where a duty is imposed upon a public official to do an official act upon compliance by others of all the statutory requirements necessary to make it the duty of the official to do the act, that no court would have power to enjoin the officer from the doing of such act. * * *" (126 Or. 647-649.)

■ ■ We held that the words "legally sufficient", as used in the statute, meant no more than that all the provisions of the statute for the initiation of the proposed measure had been complied with. The words had no reference, we said, to the question whether or not the measure, if adopted, would be constitutional. Neither the constitution nor any statute gave power to the courts to declare a proposed law, previous to its enactment, to be either constitutional or unconstitutional. Any interference by the courts with the enactment of an initiative measure, where all statutory requirements had been complied with, would in itself be a violation of the constitutional separation of the powers of government.

"* * * In such case the people alone are authorized to determine whether the proposed measure shall be enacted into law and if the measure when enacted is unconstitutional, then only have the courts power to declare it to be unconstitutional. The courts, therefore, can no more prevent, when all statutory requirements have been complied with, the people from voting upon a proposed initiative measure than it could prevent the legislative assembly, when convened, from voting upon the same measure." (126 Or. 647.)

In the earlier case of *State ex rel. McNary v. Olcott,* 62 Or. 277, 279, 125 P. 303, it was held that, by the term "legally sufficient" in the statute, the legislature meant to describe "a valid petition, signed by legal voters, and complying substantially, not necessarily technically, with the requirements of the law."

*State ex rel. Carson v. Kozer,* supra, was cited with approval in *Anderson v. Byrne,* 62 N. D. 218, 242 N. W. 687, 693, wherein it was held that a court will not, in advance of legislation, determine the constitutionality of a statute proposed by initiative petition. See also *Preckel et al. v. Byrne,* 62 N. D. 634, 244 N. W. 781, 784-5; *State ex rel. Cranmer v. Thorson,* 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582; *People ex rel. O'Reilly v. Mills,* 30 Colo. 262, 70 P. 322; *State ex rel. Bullard v. Osborn,* 16 Ariz. 247, 143 P. 117, 118. We quote from the opinion in the latter case:

"* * * What legal warrant has a court to enjoin the Secretary of State from certifying a measure whether valid or invalid? Is not the initiative petition also a step in the process of legislation? For the Secretary of State, or the courts, to assume in advance the power and right to decide whether the proposed measure was invalid would be tantamount to claiming the power of life and death over every initiated measure by the people. It would limit the right of the people to propose only valid laws, whereas the other lawmaking body, the Legislature, would go untrammeled as to the legal soundness of its measures.    *    *    *"

■ We are of the opinion that the circuit court committed no error in sustaining the defendants' demurrers upon the ground of lack of jurisdiction. We need not, therefore, consider the other alleged errors which were assigned. The decree is affirmed. No costs will be allowed to any party.