Argued and submitted January 13, affirmed February 26, reconsideration denied April 11, petition for review allowed April 29, 1986 (301 Or 76)
See 301 Or 228 (1986)

OREGON EDUCATION ASSOCIATION et al,
*Appellants,*

*v.*

PAULUS* et al,
*Respondents.*

(152580; CA A35391)

714 P2d 1060

Henry H. Drummonds, Portland, argued the cause for appellants Oregon Education Association, Sandy Ellis and Robert Cornell. With him on the briefs were Paul B. Gamson and Kulongoski, Durham, Drummonds & Colombo, Portland. Charlene Sherwood, Portland, joined in the briefs on behalf of appellants Oregon Public Employees Union, D. H. Petry and Dave Grenbemer.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents Norma Paulus and David F. Frohnmayer. With him on the brief was James E. Mountain, Jr., Solicitor General, Salem.

_____

* Barbara Roberts elected Secretary of State effective January 7, 1985.

Ronald A. Johnston, Portland, argued the cause for respondents Ruth Bendl and Vernon White. With him on the brief were Kathryn S. Augustson and Reynolds & Johnston, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action to prohibit the defendant Secretary of State and Attorney General from processing and the defendant chief petitioners[1] from circulating an initiative petition that proposes submission of a constitutional amendment to the voters at the November, 1986, general election.[2] Plaintiffs' principal contention is that the petition violates the Oregon constitutional requirement that an initiative proposal "shall embrace one subject only and matters properly connected therewith."[3] Or Const, Art IV, § 1(2)(d); *see also* Art IV, § 20; Art XVII, § 1. The issue is whether the courts may review an initiative petition for compliance with the single subject requirement before the proposed measure has been adopted by the voters. The trial court apparently concluded that pre-election review is not permissible, and it granted defendants' motions to dismiss the action. Plaintiffs appeal, and we affirm.

Plaintiffs rely on Article IV, sections 1(2)(d) and 1(4)(b) of the Oregon Constitution. Those sections provide, respectively:

> "An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

> "Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith."

Those provisions were referred by the 1967 Legislative Assembly and adopted by the voters at the 1968 primary election, as part of a comprehensive general amendment of the initiative and referendum provisions of the constitution.

The parties appear to agree, correctly, that before the

---

[1] The state officials and the chief petitioners have appeared separately.

[2] The complaint stated separate claims for declaratory and injunctive relief, for review of the official actions pursuant to ORS 183.484, for review of the Secretary's actions under ORS 246.910 and for mandamus. The basis for our disposition is equally applicable to all of those theories of relief.

[3] The proposal contains provisions relating to the permissible pay levels of public employes, to the use by government of contract services and part-time employees and to public employe pensions. Plaintiffs argue that these subjects are not sufficiently related to comply with the requirement.

1968 amendment, single subject challenges to initiative or referendum petitions and measures could not be considered by the courts before the voters had enacted the measures. In *State ex rel. v. Richardson*, 48 Or 309, 85 P 225 (1906), the Supreme Court held that the single subject requirement that Article I, section 20, places on enactments of the legislature is also applicable in the initiative process. In *Johnson v. City of Astoria et al*, 227 Or 585, 363 P2d 571 (1961), the court declined to hold that an initiative measure's purported violation of the single subject requirement provided a basis for enjoining the submission of the measure to the voters or for refusing to require election officials to submit it. The court explained:

> "Aside from an argument appropriate to the hustings, but not in a judicial proceeding, to the effect that the proposed charter amendment is a bad piece of legislation, the only defense suggested on the merits is that the measure embraces more than one subject and therefore violates Article IV § 20, of the Oregon Constitution.

> "Since this case involves a matter of public importance and concern, we feel it incumbent upon us, in the interest of avoiding needless litigation and delay, to state at this time that this court has already definitely decided that the presumed or claimed unconstitutionality of an initiative measure does not justify or excuse an officer's refusal to perform the mandatory duty of placing such a measure on the official ballot if all the preliminary statutory requirements have been complied with. *Unlimited Progress v. Portland*, 213 Or 193, 324 P2d 239 [1958]; *State ex rel. v. Newbry [et al]*, 189 Or 691, 222 P2d 737 [1950]; *State ex rel. Carson v. Kozer*, 126 Or 641, 270 P 513 [1928]. None of these cases has been cited in the briefs of counsel. They hold that an official will not be enjoined from submitting an initiative measure to the voters simply because the measure may be unconstitutional and that the courts of this state have no power to determine the question of constitutionality of a measure before its enactment into law. As Mr. Justice Rand said in the *Kozer* case:

>> " 'If the measure is unconstitutional and should be adopted, the Constitution itself will require the courts, if the question is properly presented, to pronounce the measure to be unconstitutional, but the courts possess no such power as to any proposed bill before the same has become a law and neither the executive department of the state nor the judicial department has authority to say to

either of the legislative branches of the state, "The law you are proposing to enact is unconstitutional and because it is unconstitutional you cannot determine for yourself whether the same shall be enacted into law or not." These principles, it seems to us, are so fundamental and their application to the instant case so clear as to require no citation of authorities for their support.' (126 Or, at 649)

"At the time of the decision in the *Kozer* and *Newbry* cases, OCLA 81-2105, as amended by Oregon Laws 1945, ch 85, was in effect. This statute authorized a writ of mandamus to be issued against the secretary of state or other appropriate public official who refused to accept and file a 'legally suffici-ent' petition for the initiative or referendum and the issuance of an injunction to restrain such official from certifying or printing on the official ballot a petition which was not 'legally sufficient.' The words 'legally sufficient' were held to have no reference to the question of whether the proposed measure if adopted would be constitutional, but to 'refer only to a compliance with the procedure prescribed by the statute for getting an initiative measure on the ballot.' *State ex rel. Carson v. Kozer,* supra, 126 Or, at 646. The statute, which contained provisions respecting procedure and venue, was repealed by Oregon Laws 1957, ch 608, § 231. Its repeal, however, had no effect on the law as previously announced by this court in the *Kozer* and *Newbry* cases, for the rule of those cases was followed in *Unlimited Progress v. Portland,* supra, decided in 1958.

"Under the principle of these decisions, it is equally inadmissible to inquire into the constitutionality of a pro-posed initiative measure when the remedy sought is man-damus to compel submission of the measure as when the proceeding is by injunction to restrain its submission. * * *" 227 Or at 591-93.

*See also State ex rel. v. Newbry et al,* 189 Or 691, 693, 222 P2d 737 (1950) (reaching the same conclusion with respect to an initiative measure that was challenged as violating "article XVII of the state constitution [in that] it combines as one [constitutional] amendment what are in fact three amend-ments").

Plaintiffs argue that the current Article IV, section 1(2)(d), should be construed to allow judicial consideration of pre-election single subject challenges because, unlike *former* Article IV, sections 1 and 1a, which were replaced by the 1968 amendment, and unlike Article IV, section 20, the present

provision expressly makes the single subject requirement applicable to "a *proposed* law or amendment to the Constitution," rather than using language that plainly relates only to consummated enactments. Plaintiffs also advance numerous policy arguments in support of that construction.

We have held that the courts may not conduct pre-election review of initiative measures for compliance with the single subject requirement of Article IV, section 1(2)(d), on two occasions since that provision was adopted. *Barnes v. Paulus,* 36 Or App 327, 336, 588 P2d 1120, *rev den* 284 Or 81, 588 P2d 1084 (1978);[4] *Brummell v. Clark,* 31 Or App 405, 413, 570 P2d 671, *rev den* (1977). The Supreme Court has not decided the question. However, in *State ex rel Fidanque v. Paulus,* 297 Or 711, 688 P2d 1303 (1984), one specially concurring judge and two dissenting judges would have held that Article IV, section 1(2)(d), makes initiative measures subject to pre-enactment judicial review for compliance with the single subject requirement. Plaintiffs argue, in effect, that *Barnes v. Paulus, supra,* and *Brummell v. Clark, supra,* do not survive *Fidanque* and are wrong in any event and should be overruled. Plaintiffs state:

> "Though the *Fidanque* majority did not expressly overrule the Court of Appeals' prior holding against pre-election 'one subject' review in *Barnes v. Paulus,* the reasoning of the *Fidanque* court, and the holding that the *Fidanque* petitioners were 'too late' [in bringing their mandamus action very shortly before the election] strongly suggests that *timely* pre-election review would be allowed." (Emphasis plaintiffs'.)

The majority in *Fidanque* did not decide the question before us. However, plaintiffs' position does find aid in Judge Lent's concurrence and Judge Linde's dissent, in which Judge Roberts joined. Axiomatically, neither of those opinions is authoritative, and they bolster plaintiffs' argument only to the extent that they are persuasive. Judge Lent's opinion is short and conclusory, and it is premised on the understanding that the meaning of the language of Article IV, sections 1(2)(d) and 1(4)(b), is plain. We do not agree that the language of those

---

[4] The Supreme Court denied review, with opinion, because of the close proximity of the election. It emphasized that it was "expressing no opinion on the validity or invalidity of the proposed measure or the challenges made by petitioners to the manner of its submission." 284 Or at 86.

provisions plainly (or even apparently) affects the *time* of *judicial* reviewability.

Judge Linde's dissent relied on legislative history and policy considerations, as well as on the wording of the provisions. The dissent's historical analysis is, in relevant part:

> "In 1962, the Commission on Constitutional Revision made two recommendations concerning the one-subject rule. The commission proposed that Article IV, section 20, quoted immediately above, be changed so as to read that each *bill* would be limited to one subject and matters connected therewith. Revised Constitution, Art IV, § 22 (1962) (emphasis added). At the same time, the commission proposed that the one-subject limitation apply to a 'proposed law or amendment to the Constitution' when 'proposed' by initiative petition. Revised Constitution, Art II, § 1.

> "A 'bill' is proposed law, not a law. An initiative petition also is a 'proposed' law by the words of the constitution itself. The purpose of the changes recommended in the Revised Constitution is apparent from the substitution of 'bill' for 'act' and the insertion of 'proposed law' in the article dealing with initiative petitions. This apparent purpose is to move the time for scrutinizing the validity of proposed legislation forward into the legislative process, not leave it to be scrutinized after that process is over.

> "* * * * *

> "The Revised Constitution was not enacted. But in 1967, the Legislative Assembly submitted, and the voters in 1968 adopted, a new text for the initiative provisions of Article IV, including the one-subject limitation on a 'proposed law.' Although little was said about it in the legislative history, there is no doubt that this change originated in the Revised Constitution, which the legislature studied and considered during the 1963 and 1965 sessions. As to completed enactments, however, the one-subject limitation on 'Acts' stated in Article IV, section 20, was not involved in the change and has been left intact.

> "I conclude, therefore, that under Article IV, section 1, an initiative petition is not eligible to be submitted 'as provided in this section' if it is a 'proposed law' that embraces more than one subject and matters properly connected therewith." 297 Or at 720-21

Our difficulty with that analysis is twofold. First, we do not think that it is a given that the legislature's inclusion of

the word "proposed" in section 1(2)(d) and its decision not to change "act" to "bill" in section 20 reflects an intention that bears on the time when judicial intervention in the process is permissible. There are simpler explanations. The subject of section 1(2)(d) is initiative petitions, and the only function of such petitions is to make proposals. It therefore seems logical to us to regard the term "proposed" in section 1(2)(d) as the choice of an appropriate word in its context rather than as the manifestation of a legislative decision to establish pre-election review for compliance with the single subject requirement. As we have noted, and as the *Fidanque* dissent also notes, the applicability of that requirement to initiative measures was announced in a 1906 Supreme Court decision. It was also well established by judicial decisions that preceded the legislature's action in 1967 that pre-election, single subject review was unavailable. We doubt that the legislature would have selected the oblique approach of using the word "proposed" in section 1(2)(d) to overturn the judicial holdings of non-reviewability; if it intended to reject those holdings, we think it would have overtly said so, rather than depending on its intent being discerned from a single word which appeared in an extensive measure and which has no facial relationship to judicial review.

Our second problem with the *Fidanque* dissent's analysis is that it seems to equate the "apparent" intent of the Commission on Constitutional Revision with the legislature's intent five years later and the voters' intent six years later. That is a weak equation at best. The most relevant barometer of popular intent is the explanation of the measure in the Official Voters' Pamphlet for the May 28, 1968, primary election. It states, as relevant here, that the purpose of the repeal of the existing provisions and their replacement with the proposed ones was essentially one of linguistic "clean-up." *See* Official Voters' Pamphlet, Primary Election, May 28, 1968, page 8. The legislative history of the 1967 proceedings leading to the adoption of the referring resolution shows a similar nonsubstantive intent with respect to the parts of the 1968 amendment that concern us.

We said in *Barnes v. Paulus, supra*:

"At the outset, it should be recalled that the role of the judiciary in controlling the actions of the Secretary of State is

limited. Courts are without power to inquire into the constitutional validity or the legality of the subject matter of an initiative measure prior to its enactment. *Oregon AFL-CIO v. Weldon,* 256 Or 307, 312, 473 P2d 664 (1970); *Johnson v. City of Astoria et al,* 227 Or 585, 591-93, 363 P2d 571 (1961); *Unlimited Progress v. Portland,* 213 Or 193, 195, 324 P2d 239 (1958); *State ex rel. Stadter v. Newbry et al.,* 189 Or 691, 697-98, 222 P2d 737 (1950); *State ex rel. Carson v. Kozer,* 126 Or 641, 649, 270 P 513 (1928) [hereinafter *Carson II*]. The only pre-enactment authority possessed by the courts is to review the legal sufficiency of an initiating petition. *Unlimited Progress,* 213 Or at 195, *Carson II,* 126 Or at 644-45. The words 'legally sufficient' refer only to compliance with the prescribed procedures for getting an initiative measure on the ballot. *Newbry,* 189 Or at 697, *Carson II,* 126 Or at 646." 36 Or App at 332.

The *Fidanque* dissent and plaintiffs advance policy reasons for placing single subject issues on the "legal sufficiency" rather than the "constitutional validity" side of the line. However, as the Supreme Court made clear in *Johnson v. City of Astoria, et al, supra,* and as we made clear in *Brummell v. Clark, supra,* whether an initiative measure complies with the constitutional single subject requirement *is* a constitutional question. To the extent that policy factors have any bearing on the analysis, we consider the overriding policy to be the one that the Oregon appellate courts have reiterated in virtually every decision involving a pre-election challenge to a ballot measure, *i.e.,* that it is preferred for the courts not to intervene in the legislative process and not to defeat the ability of the people to vote on initiative and referendum proposals. Given the absence of any persuasive reason to believe that the 1968 enactment of the constitutional provisions on which plaintiffs rely was intended to displace the long-standing rule that single subject questions are not susceptible to pre-enactment judicial review, we adhere to our holdings in *Barnes v. Paulus, supra,* and *Brummell v. Clark, supra,* that they are not.

Plaintiffs also contend that the initiative measure involves nonlegislative purposes. They explain:

"[T]he measure may constitute an attempt to interpose legislative power impermissibly on the judicial branch since the measure would appear to require contracting out of

judicial staff work on the basis solely of cost and productivity."

That, too, is a question of substantive constitutionality that must abide the day. *See, e.g., Circuit Court v. AFSCME,* 295 Or 542, 669 P2d 314 (1983).

Affirmed.