Submitted on motion to dismiss January 29, dismissed February 19, rehearing denied March 25, motion for reconsideration allowed April 15, motion to dismiss denied and appeal reinstated July 15, respondents' petition for rehearing denied September 23, respondents' motion for reconsideration denied September 30, 1924, argued January 26, modified March 15, rehearing denied June 21, motion to modify denied July 6, 1927.

## ROY ADAMS ET AL. *v.* WILLIAM KENNARD ET AL.

(222 Pac. 1092; 227 Pac. 738; 253 Pac. 1048.)

**Appeal and Error—Defendants as Against Whom Complaint was Dismissed Held Necessary Parties to Appeal by Another Defendant.**

1. Where a decree was rendered in favor of plaintiff as against one defendant, and the complaint dismissed as against the other defendants, and the defendant against whom the judgment was rendered appealed, *held*, that the appeal was from the entire decree, and not from that part unfavorable to appellant, and the other defendants were necessary parties, and the Supreme Court is without jurisdiction where no notice was served on them, in view of Section 557, Or. L.

**Appeal and Error—Party Whose Interest Might be Adversely Affected by Decree Held Necessary Party.**

2. Any party whose interest might be adversely affected by the Supreme Court decree is a necessary party to the appeal.

**Appeal and Error—Wipes Out Previous Adjudication.**

3. The granting of a new trial wipes out the previous adjudication, and the case proceeds *de novo*, and must be conducted, as far as practicable, as if there had been no previous trial.

---

3. See 20 R. C. L. 317.

**Appeal and Error—Reopens All Issues, Including Issues Found in Favor of Party Requesting New Trial.**

4.   Unless limited to particular issues or parties, a new trial reopens all the issues in the case, including any issues found in favor of the party asking for the new trial, and a court will not ordinarily restrict the new trial to the issues found against such party without the consent of the adverse party.

**Appeal and Error—Supreme Court Empowered to Set Aside Decree and Remand Case for Further Proceedings.**

5.   While ordinarily, in appeals from a decree the Supreme Court will try the issues anew, yet it has the power to set aside the decree of the Circuit Court and remand the cause for further proceedings.

## ON SECOND MOTION TO DISMISS APPEAL.

**Appeal and Error—Codefendant Held to have Appealed Only from Decree Against Him.**

6.   Where, in a suit charging three defendants with a joint tort, defendants answered separately without seeking affirmative relief against any one, and a decree was rendered in favor of plaintiffs as against defendant K., and complaint as against remaining two codefendants was dismissed, defendant K.'s appeal from final decree "in favor of plaintiffs and against said defendant K.," and "from the whole and every part of said decree made and entered in the above-entitled court and cause," *held* an appeal only from that portion of decree entered against defendant K.

**Appeal and Error—Separate Decrees as to Three Codefendants Held to Divorce Their Interests so That Notice to Them of Appeal by One Defendant was not Necessary.**

7.   Where, in a suit charging three defendants with a joint tort, each defendant answered separately without seeking affirmative relief against any one, separate decrees entered as to each defendant *held* to have divorced completely the interests of each, so that on appeal by one defendant, the other defendants were not adverse parties and did not require notice of such appeal.

**Judgment—Decree Against Plaintiffs not Appealed from Within Time Limited, Final Against Plaintiffs.**

8.   A decree against plaintiffs as to two of three codefendants, which was not appealed from within time limited, was final as to such codefendants, and was a bar in their favor against plaintiffs as to any further litigation of the issues involved therein.

**Appeal and Error—Rule for Determining Whether Party is Adverse, Requiring Notice of Appeal, Stated.**

9.   If interests of a party, on appeal by another party, may be adversely affected, such party is entitled to notice of appeal in default of which Supreme Court will not require jurisdiction, but, if the only possible modification of the decree would improve his condition, he is not an adverse party, and it is not necessary to notify him of the appeal.

---

4.   See 20 **R. C. L.** 313.

ON THE MERITS.

**Trusts—Trustee cannot Purchase Property of Cestui Que Trust.**

10.   Trustee cannot rightfully be at once seller and purchaser of property of *cestui que trust*.

**Executors and Administrators—Decedent's Children may Recover Damages as Additional Compensation, Where One Executor Brought Decedent's Interest in Partnership Estate Without Paying Full Value, Since Such Transaction was Void, Under Statute (Or. L., § 1276).**

11.   Sale of decedent's interest in partnership estate by executors, to one of them who was decedent's partner, was void, under Section 1276, Or. L., notwithstanding that transfer was authorized by County Court, especially where full value was not paid, and decedent's children may recover damages as additional compensation, where property sold could not be followed.

**Executors and Administrators—Executor's Purchase of Decedent's Interest in Partnership Property Did not Involve Commission of Crime as Regards Heir's Right to Ratify Transaction and Recover Damages.**

12.   Transaction by which one executor bought decedent's interest in partnership estate, where transfer was authorized by County Court, did not involve commission of crime as regards right of heirs to ratify transaction and recover damages for executor's misfeasance.

**Executors and Administrators—Evidence Held Insufficient to Show Fraud in Executor's Purchase of Decedent's Partnership Estate.**

13.   Evidence *held* insufficient to show fraud, in purchase by executor of decedent's partnership estate, by inducing appraisers to undervalue property or misrepresenting condition of business to heirs.

Executors and Administrators, 24 **C. J.**, p. 217, n. 10, p. 218, n. 14, p. 219, n. 18 New, 24, p. 220, n. 31.
Trusts, 39 **Cyc.**, p. 366, n. 54, p. 367, n. 58, p. 371, n. 72.
See 3 **C. J.**, pp. 1014, 1221, 1227; 4 **C. J.**, pp. 1194, 1240.

From Multnomah: GEORGE ROSSMAN, Judge.

In Banc.

DISMISSED.   REHEARING DENIED.

For the motion, *Messrs. Manning & Harvey.*

*Contra, Messrs. Dey, Hampson & Nelson.*

10.   See 26 **R. C. L.** 1326.
For authorities discussing the question as to effect of new trial on verdict and judgment of former trial, see note in 44 **L. R. A. (N. S.)** 346.

COSHOW, J.—1. This cause is before us on a motion to dismiss an appeal. The plaintiffs instituted a suit against William Kennard and George W. Bates, Jr., who were the executors and trustees under the will of Truman L. Adams, deceased, and Harry L. Raffety, as agent and attorney for the said George W. Bates. The three defendants answered separately appearing by different attorneys. The suit is for an accounting and damages based upon an alleged fraudulent sale of the property of the estate by the defendants to said William Kennard. A decree was rendered in favor of the plaintiffs against the defendant, William Kennard, who appeals. The decree dismissed the complaint as against the other defendants, Bates and Raffety, and awarded a judgment for costs in favor of Bates against the plaintiffs. The appellant, William Kennard, served a notice of appeal upon the plaintiffs only. Plaintiffs moved to dismiss because the defendants, George W. Bates and Harry L. Raffety, are necessary parties in this court. It is well settled in this state that any party whose interests *might be* adversely affected by the decree entered in this court is a necessary party to the appeal.

"Upon an appeal, the appellate court may affirm, reverse, or modify the judgment or decree appealed from, in the respect mentioned in the notice, and not otherwise, as to any or all of the parties joining in the appeal, and may include in such decision any or all of the parties not joining in the appeal, *except a codefendant of the appellant against whom a several judgment or decree might have been given in the court below;* and may, if necessary and proper, order a new trial." Section 557, Or. L.

The appellant, Kennard, appealed from the entire decree. The language in the notice of appeal does

not admit of any controversy. There was only one decree entered. The appellant, with commendable zeal, contends inasmuch as the appeal was directed to the plaintiffs and refers to the appeal as being against appellant, that the appeal is therefore from only so much of the decree as is against the appellant. However, he does not find his appeal to that part of the decree which is adverse to his client but appeals from the decree and the whole thereof.

The concluding language in the notice of appeal is as follows:

"Does hereby appeal to said supreme court from the whole and *every part* of said decree made and entered in the above entitled court and case."

2. The defendants, George W. Bates, Jr., and Harry L. Raffety, were codefendants of the appellant. A separate decree not only might have been given in the court below against them, but in this case a separate decree was actually rendered in their favor. The notice of appeal is as much from the parts of the decree dismissing the complaint as to Bates and Raffety as it is to the part of the decree against the appellant. The notice of appeal reads: "From the whole and every part of said decree." This court has the power upon the appeal "to affirm, reverse or modify the judgment or decree appealed from, * * and may, if necessary and proper, order a new trial." *Powell* v. *Dayton, S. & G. R. R. Co.,* 13 Or. 445, 446 (11 Pac. 222); *State* v. *Richardson,* 48 Or. 309, 314 (85 Pac. 225, 8 L. R. A. (N. S.) 362); *Kenworthy* v. *Slooman,* 62 Or. 604, 607 (125 Pac. 273).

In *State* v. *Richardson,* 48 Or. 309, 314 (85 Pac. 225, 8 L. R. A. (N. S.) 362), this court, speaking through Mr. Justice MOORE, used this language:

"When, on appeal from a decree in equity, the cause is sent back because the complaint is considered insufficient or the evidence inadequate to support a material averment, no final decree is rendered in this court, except to set aside the decree of the court below and to require further proceedings to be had therein. The rule, therefore, as promulgated in *Powell* v. *Dayton S. & G. R. Ry. Co.,* 13 Or. 446 (11 Pac. 222), applies only to suits in equity.

Under the authority in *Powell* v. *Dayton S. & G. R. Ry. Co.,* this court has the power to reverse the decree of the court below and remand the case.

3, 4. "The granting of a new trial wipes out the previous adjudication, and the case proceeds *de novo,* and must be conducted, as far as practicable, as if there had been no previous trial. Unless limited to particular issues or parties, a new trial reopens all the issues in the case, although some of the issues were found in favor of the party asking for the new trial, and the court will not ordinarily restrict the new trial to the issues found against such party, without the consent of the adverse party." 20 R. C. L. 317, § 101.

"The effect of granting a new trial is to set aside both the verdict and the judgment, without any specific mention of either. It places the case exactly in the position it occupied before there had been a trial, and the party stands as if he had never been tried. When granted in general terms it operates as a new trial as to all the parties, reopens all the issues in the cause, and amendments to the pleadings may be permitted." 20 R. C. L. 313, § 97.

5. While ordinarily in appeals from a decree this court will try the issues anew, yet it has the power to set aside the decree of the Circuit Court and

remand the cause for further proceedings. If that should be done in this suit it might place all the parties in the same position in which they were at the commencement of the trial in the Circuit Court. The defendants, George W. Bates, Jr., and Harry L. Raffety, are interested therefore in maintaining the decree as it now is, and are necessarily adverse parties to the appellant in this appeal.

The case of *First Nat. Bank* v. *Halliday,* 98 Or. 649 (193 Pac. 1029), is controlling. The facts in that case were similar to the facts in this case on principle. The notice of appeal is very similar to the notice of appeal in the instant case. In the case of *First Nat. Bank* v. *Halliday, supra,* only one of the two defendants appealed. The notice was served on the plaintiff as in the instant case. Mr. Justice BURNETT employed this language in announcing the decision of this court:

"The conclusion is that there is a *possibility* that her interest will be affected by a modificaton of the decree according to the contention of the appealing son. She is therefore an adverse party within the meaning of the precedent cited, and the notice of appeal should have been served upon her as such."

In the instant case the defendants, Bates and Raffety, are undoubtedly interested in maintaining the decree as rendered. The respondents cannot get any more favorable decree than the decree rendered in the Circuit Court. A reversal of the decree and remanding the suit for further proceedings would not be more favorable to respondents than the decree appealed from. The appellant has brought here the entire decree and if this court should find that competent evidence had been rejected, or for any cause that a complete trial of the issues had not been had, and should conclude that equity re-

quired the case to be remanded, it has the power to reverse the decree of the Circuit Court and remand the cause. Bates and Raffety should, therefore, have been served with the notice of appeal. The court is without jurisdiction to hear the appeal on the notice as given and served. If appellant had desired to limit the consideration of this court to the particular portion of the decree against the appellant, he should have given notice to that effect. Bates and Raffety were proper parties to the suit. They are not brought into this court. This court is precluded under Section 557, Or. L., from including them in any decision we might render. This court, therefore, might be prevented from rendering such a decree as we may determine equitable and just. We are thus limited by the notice of appeal under Section 557, Or. L. That limitation prevents jurisdiction of this court from attaching.

The appeal will have to be dismissed because this court is without jurisdiction to hear and determine the suit.                DISMISSED. REHEARING DENIED.

---

Motion to dismiss denied July 15, 1924.

ON MOTION TO DISMISS APPEAL.

(227 Pac. 738.)

*Messrs. Manning & Harvey,* for the motion.

*Messrs. Dey, Hampson & Nelson, contra.*

BURNETT, J.—A brief history of this litigation is as follows: The defendant, Kennard, was in partnership with Truman L. Adams, later deceased, during the lifetime of the latter. Adams left a will appointing Kennard and George W. Bates, Jr., as

executors thereof. After leaving some property to his widow he devised to Kennard and Bates the remainder of his estate in trust for the benefit of his two children, empowering the trustees to continue the business in which the deceased was engaged at the time of his death, or to close out the same and pay the proceeds to the plaintiffs. The complaint charges that the defendants, Kennard, Bates and Raffety, the latter being the attorney for Bates, fraudulently conspired and by false and fraudulent representations persuaded the appraisers to value the firm property at $15,000, when in fact it was worth $41,291.55, all for the purpose of enabling the defendant Kennard to purchase the interest of the estate at less than its actual value. By appropriate allegations, the complaint narrates the carrying out of this scheme even to the final account of the executors and the allowance thereof with the result that, in fraud of the plaintiffs, Kennard obtained for $7,500 property of almost thrice that value to the damage of the plaintiffs. The object of the suit was to set aside the final account and the sale of the property to Kennard and compel the defendant executors to account to the plaintiffs for the property thus unlawfully obtained. Each defendant answered separately, justifying his own acts and without seeking any affirmative relief against any one. After issue joined, the court heard the case on the testimony and made the following decree, omitting formal particulars:

"IT IS ORDERED, ADJUDGED AND DECREED that the complaint be dismissed as to the defendant, Harry L. Raffety, without costs to either the said defendant or plaintiffs.

"IT IS ORDERED, ADJUDGED AND DECREED that the complaint be dismissed as to the defendant, Geo.

W. Bates, Jr., and that the said Geo. W. Bates, Jr., recover from and of the plaintiffs herein his costs and disbursements to be taxed.

"IT IS ORDERED, ADJUDGED AND DECREED that the defendant, William Kennard, has received for and on behalf of the plaintiffs herein personal property and money in trust for the plaintiffs herein arising from the business and sale of the Kennard & Adams department store, for which the said Kennard has not fully accounted to plaintiffs; and the final report of the defendants, Geo. W. Bates, Jr., and William Kennard, as executors of the estate of Truman L. Adams, deceased, purporting to account for the moneys and property so received, be, and the same is hereby set aside and annulled.

"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the plaintiffs, Roy Adams and Mabel P. Adams, by her guardian, Theresa H. Johnson, have and recover judgment from and against the defendant, William Kennard, for the sum of fourteen thousand forty-eight dollars and eight cents ($14,048.08) and their costs and disbursements to be taxed at $41.00."

In due time thereafter, Kennard served a notice of appeal on the plaintiffs but not on either of his codefendants. After the title of the cause and address to the plaintiffs and their attorneys, the notice reads thus:

"You and each of you are hereby notified that William Kennard, one of the defendants in the above-entitled suit, does hereby appeal to the Supreme Court of the State of Oregon, from the final decree made and entered in said suit on the 1st day of June, 1923, in favor of plaintiffs and against said defendant, William Kennard, and the said defendant, William Kennard, does hereby appeal to said Supreme Court from the whole and every part of said decree made and entered in the above-entitled court and cause."

Upon the lodgment in this court of the transcript, the plaintiffs moved to dismiss the appeal of Kennard because the notice of appeal was not served upon his codefendants. This motion was sustained and the appeal dismissed in an opinion written by Mr. Justice CosHOW, reported *ante,* p. 87 (222 Pac. 1092). A rehearing was granted and the motion was urged before the full court.

6, 7. One question to be determined is the scope of the appeal. The notice informs the plaintiffs that Kennard appeals "from the final decree made and entered in said suit on the first day of June, 1923, in favor of plaintiffs and against said defendant William Kennard." He manifests no concern about any part of the decree except that which affects him. It is true that the final clause of the notice reads that Kennard "does hereby appeal to said Supreme Court from the whole and every part of said decree made and entered in the above-entitled court and cause." The words, "said decree" refer to and identify what goes before in that notice, namely, the decree in favor of plaintiffs and against said defendant, William Kennard. The concluding clause in the notice cannot rightfully be applied to any other decree than that one entered against Kennard and in favor of the plaintiffs. Comparing the notice of appeal with the entire pronouncement of the court in its final determination of the suit, it is plain that Kennard appealed from only a part thereof. Only a portion of the whole journal entry in the record of the court in this suit on that date of June 1, 1923, will coincide with the description thereof contained in the notice of appeal. It cannot be applied to the parts dismissing the suit as to Raffety and Bates. As to the plaintiffs, there were three decrees; two against them

and one in their favor. Kennard was concerned only as to the latter. The interests of his codefendants were not involved either in its maintenance or its overthrow. Each defendant having defended separately by separate answers and having been visited with separate decrees, their interests are completely divorced and thenceforward neither is in any way concerned about what becomes of either of his codefendants. Neither defendant is adverse to the other as to the appeal because neither can be affected by the result of any appeal either of the others might inaugurate.

8, 9. The plaintiffs did not appeal and the time within which they could have appealed having elapsed before filing the motion to dismiss Kennard's appeal, the decree of the Circuit Court dismissing the suit as to Raffety and Bates is final beyond appeal as between the latter two and the plaintiffs. Taking the complaint as true, Raffety, Bates and Kennard were charged with a joint tort. Whatever the result, there neither was nor could be any right of contribution between the three defendants; so Kennard has no basis of attack against either of his codefendants nor does he even attempt it. The defendants not served with notice of appeal are immune from attack by any and all other parties to the suit. Kennard has not alleged anything against them; neither has he attempted any relief affecting either of them, so no harm can come to the codefendants from Kennard for the reason that he could not enforce contribution against them for the tort with which they are charged and for the further reason that he has no basis in his pleadings upon which to attack them. As to Bates and Raffety, the decree dismissing the suit as to them is final between them and the plaintiffs because it

was rendered by a court having jurisdiction over the persons of the defendants and of the subject matter of the suit and that decree has never been appealed from by the plaintiffs or Bates or Raffety and the time therefor having long since elapsed, the decree is final as to them. Being thus final, it constitutes a bar in favor of Bates and Raffety and against the plaintiff as to any further litigation of the issues involved in this suit.

The situation of Bates and Raffety is one of indifference between the plaintiffs on one hand and their codefendant Kennard on the other. They are completely protected from any harm at the hands of the plaintiffs and on the part of their codefendant. It is a matter of no moment to either Bates or Raffety what may be the outcome of the litigation on the appeal of Kennard, which the plaintiffs have moved to dismiss. Because he has no right to call upon either of his codefendants to aid him in answering for the tort with which the plaintiffs charge all of them, Kennard cannot complain that the suit was dismissed as to them. He is interested solely in clearing his own skirts. As to him, they are not adverse parties but at most, only indifferent and hence were not entitled to notice of his appeal. Under the circumstances disclosed by the record, Kennard cannot work any harm or disadvantage to either of his codefendants. Neither can the plaintiffs obtain a better judgment or decree against Bates or Raffety than they had in the court below, because they have not appealed from the decree: *Caro* v. *Wollenberg,* 83 Or. 311 (163 Pac. 94); *Crumbly* v. *Crumbly,* 94 Or. 617 (186 Pac. 423); *Johnson* v. *Prineville,* 100 Or. 105 (196 Pac. 817).

It thus appears that Bates and Raffety are not in any danger of prejudice in this litigation, either from their codefendant or from the plaintiffs and hence, so far as the plaintiffs are concerned, they are not necessary parties to the disposition of the appeal of Kennard and were not entitled to notice thereof. It does not lie in the mouth of the plaintiffs who must be satisfied with the decree from which they have not appealed, to complain that Raffety and Bates are not brought into this court. The canon established by all our precedents and by which it is determined whether a party is adverse to the appellant is in substance this: that if on the appeal, the interests of a party could be adversely affected, he is entitled to notice of the appeal of another party, in default of which this court will not acquire jurisdiction. On the other hand, if the only possible modification of the decree would better his condition, he is not an adverse party and it is not necessary to notify him.

Some of the precedents cited by the plaintiffs are here examined.

*Hamilton* v. *Blair*, 23 Or. 64 (31 Pac. 197), was a suit to determine the right of some wheat depositors to bulk wheat in a defaulting warehouse. One of the tenants in common, though a party against whom a decree was rendered, was not served with notice and the appeal was dismissed for the reason that the appellate court properly might have added to his burden on appeal.

In *Moody* v. *Miller*, 24 Or. 179 (33 Pac. 402), the wife of a defendant in the case was interested in sustaining the decree against her husband, also a defendant, because its reversal would have made her personally liable for the entire judgment which

122 Or.—7

would have been a lien on her real property. Hence the court decided that she was a necessary party in the appeal and that the notice should have been served upon her.

On the other hand, in *Osborn* v. *Logus*, 28 Or. 302, 305 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997), the court had before it a suit to foreclose material-men's liens. The contractors to whom the materials were furnished, though made defendants, were not served with summons and did not appear. The notice of plaintiff's appeal was not served on them. It was held that they were not affected by the decree dismissing the suit and hence, were not adverse parties.

In *United States National Bank* v. *Shefler*, 77 Or. 579 (143 Pac. 51, 152 Pac. 234), the dispute on appeal was between junior encumbrancers in a suit to foreclose a mortgage. The makers of the note secured by the senior mortgage were not served with notice of appeal. The court, speaking by Mr. Justice EAKIN, after stating the case said:

"There is no modification of the decree that can be made on the appeal which would affect them adversely and as the decree is adverse to them, they have no interest in upholding it."

In short, they were bound to pay their note in any event, no matter what the dispute between subsequent encumbrancers might be. Hence they were not interested in the dispute between those other parties, either of whom might appeal without serving notice to the makers of the note. Consequently they were not adverse parties.

In *Johnson* v. *Paulson*, 83 Or. 238 (154 Pac. 685, 163 Pac. 435), the decree was in favor of several lien claimants (by consent as to one of them) and they

were to share *pro rata* in the distribution of the proceeds of the sale of the premises under the decree. The appeal was dismissed as to this single lien claimant for two reasons: 1. because a consent decree is not appealable; and 2. because a modification or disallowance of the other liens on appeal would not prejudice his right, but, on the other hand, would increase the fund in which he was entitled to share; therefore he was not an adverse party upon whom service was necessary.

This principle, making the possibility of a party's interest being harmed the standard on appeal, runs through all the cases cited by the plaintiffs here. If the only modification possible will be favorable to the one not served or if the situation cannot be made worse for him on appeal, it is not necessary to serve him with notice.

On the record before us where all parties had their day in court before a tribunal of competent jurisdiction, there is no reason apparent in the record and none can be pointed out indicating that any harm can befall either Bates or Raffety by any possible disposition of the appeal of Kennard. The plaintiffs cannot harm them because the final decree has become a bar to any litigation the plaintiffs might carry on upon the issues joined in the pleadings. The appellant cannot harm them because they are not interested in the result as to him and he cannot attack them because he has no basis either in the facts or the pleadings to sustain such an attack. Our former opinion was erroneous and should be withdrawn. The motion to dismiss the appeal is overruled. MOTION DENIED.

COSHOW, J., Dissenting.—The former opinion in this case is reported in 222 Pac. 1092. Nothing new,

either by way of argument or authority, was advanced on the petition for rehearing or at the oral argument made at the rehearing. The address of the notice of appeal is to the plaintiffs. The decree is described as being in favor of the plaintiffs and against the appellant Kennard. These two parts of the notice, however, do not describe the scope of the appeal. They simply identify the decree appealed from. In that respect the notice is sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is taken from the decree to the Supreme or Circuit Court as the case may be.

The statute provides that notice be given that the appeal is taken from the judgment, order or decree, *or some specified part thereof.* The notice in the instant case appeals from the whole and every part of said decree. There was only one decree entered. The language of the notice specifying the scope of the intended appeal is certain, definite and unambiguous. If the notice had been served upon the codefendants of the appeal, there is no question about this court having jurisdiction to retry the case on its merits and render a decree based upon the law and the evidence of the entire case. It requires no construction. The statute clearly points out the contents of the notice of appeal when it is the intention of the appellant to limit or restrict the appeal to less than the whole of the decree. An appeal to this court being statutory, it is necessary to follow the statute in order to confer jurisdiction on this court. The contention of appellant Kennard would restrict the action of this court to affirming or modifying the decree of the Circuit Court. The statute clearly authorizes the court to

reverse a decree and remand the case: Section 557, Or. L.

This court has frequently exercised its authority to reverse a decree in equity and remand the case: *Anderson* v. *Burgess,* 110 Or. 265 (223 Pac. 244), and cases cited in the original opinion on the motion to dismiss in the instant case.

If the process of conferring jurisdiction of this court was not statutory and that process was left to the rules of this court so that the court could exercise some discretion, every doubt should be resolved in favor of the appellant because it is more satisfactory to decide every case upon its merits than upon procedure. It is regrettable that almost 50 per cent of the decisions of this court are based upon questions of procedure; but the procedure in this court is fixed by statute. The jurisdiction of this court depends upon compliance with the statutory enactments.

It is contended that the intention of the appellant was to appeal from the part of the decree only adverse to him. But the intent of the appellant must be gathered from the notice of appeal. The language as stated above is certain, definite and unambiguous. The appeal is from the whole of the decree and every part thereof.

Complaint is made because no reference was made in the opinion to *Colby* v. *City of Portland,* 85 Or. 359 (166 Pac. 537), and relied upon by appellant. This case was considered when the original opinion was written. The difference between the two cases is so wide that it was not deemed helpful to point it out. It clearly appears from the language of the learned Chief Justice in the Colby case that the interested parties not served had not been adjudicated. On page 370, is this language:

"We can conceive in no way in which the interests of the city of Portland can be injuriously affected by this appeal. *If the judgment of the circuit court should be reversed,* that would not reinstate the city of Portland as a party defendant. If it should be affirmed, the plaintiff, would still be at liberty to begin another action—in fact, could have begun one at any time after the entry of judgment of nonsuit, and in case of a recovery have issued execution upon either judgment."

In the instant case the codefendants of the appellant were not granted a nonsuit. The case was fully and finally adjudicated as to them unless reversed by this court. The plaintiffs could not begin another suit against them on the same cause of suit. This difference is so wide that it eliminates the *Colby* v. *City of Portland* case above as an authority. The only distinction between the instant case and the case of *First National Bank* v. *Halliday,* 98 Or. 649 (193 Pac. 1029), is this: In that case the defendants not served might have been injured by a modification of the decree. In the instant case a reversal of the decree would result to the injury of the defendants not served. A reversal of the decree would not be more favorable to the plaintiffs, but would be detrimental alike to the plaintiffs and the defendants not served. The codefendants of appellant are interested in the affirmance of the decree appealed from.

Because the codefendants of the appellants are not before this court, the decree appealed from could only be either affirmed or modified. The statute expressly provides that this court may reverse and remand. The appellant has not limited his appeal, by his notice, to the portion of the decree adverse to him. His codefendants are as much interested in the affirmance

of the decree appealed from as are the plaintiffs. His codefendants are not brought into this court. For these reasons and the reasons assigned in the original opinion on this motion, the motion to dismiss the appeal should be granted.

<hr>

ON THE MERITS.

MODIFIED.    REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Raffety & Pickett* and *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondents there was a brief over the name of *Messrs. Manning & Harvey.*

PER CURIAM.—Truman L. Adams died in Multnomah County, Oregon, August 17, 1917. He was then a partner with William Kennard in a department store in Portland besides owning other private property. He left a will of which the defendants Kennard and Bates were named as executors and as trustees to act without bonds in the management and settlement of the estate. After making provision for his widow in lieu of her dower, which provision was afterward accepted by her, the document devised to the defendants Kennard and Bates, as trustees for the benefit of the plaintiffs herein and his now deceased mother not here involved, all the other property of the estate and empowered them in their discretion to conduct the business, the net income of any such business to be paid to the plaintiffs share and share alike, or to close it out and pay the proceeds thereof to the plaintiffs. Adams and Kennard were

equal owners of the department store in question. Appraisers were appointed in regular course when the will was probated and they appraised the partnership property at a net value of $15,000. In substance, the complaint alleges that the defendants procured the appraisers to be appointed and to make the appraisement of $15,000, which was averred to be far below the actual value of the partnership estate, fraudulently and in pursuance to a conspiracy to secure a low valuation for the purpose of enabling the defendant Kennard to buy the partnership estate at less than its true value.

The defendant Raffety was employed as an attorney to represent the other two defendants in the settlement of the estate and he is included in the complaint by appropriate averments as one of the joint tortfeasors engaged in bringing about the untoward result of which the plaintiffs complain. In passing, it is to be noted that the Circuit Court hearing this case dismissed the suit both as to Raffety and as to Bates. No appeal has been taken as to either of them, so the present issue is between the plaintiffs as respondents and the defendant Kennard as appellant.

It is said in the complaint that the defendants on August 8, 1918, filed in the County Court of Multnomah County a petition to that court praying that a citation issue to the heirs of the estate to show cause why the interest of the estate of Truman L. Adams, deceased, should not be sold to William Kennard, the surviving partner of the firm, he being at the time one of the executors of the estate of Adams, at the appraised value of $7,500. Without reciting any order of the court authorizing such action, the complaint avers, in substance, that thereafter the executors

"transferred and sold all of the interest of the estate of Truman L. Adams, deceased, in and to said partnership business to the said William Kennard to the loss and damage of these defendants in the sum of thirteen thousand, one hundred forty-five and 77/100 ($13,145.77) Dollars."

It is charged that prior to the sale of the interest of the decedent in the partnership estate, the executors continued to transact the business of the partnership from the death of Adams until August 24, 1918, and it is alleged that during that time there was a profit in excess of $12,000 for the year 1917 and $18,458 in the year 1918, all of which had been retained by the defendants and converted to their own use. The complaint goes on to state, in substance, that the defendants Kennard and Bates filed their final account as executors, showing the sale of the Adams interest to Kennard for the sum of $7,500, omitting to state any account of the profits of the store during the time it was conducted, and afterward on November 3, 1918, the final account of the executors was approved and they were discharged, and thereafter Kennard and Bates, as trustees, paid to the plaintiffs herein a part of the money arising from the sale of said interest in the partnership business for $7,500, but wholly failed and refused to pay to them or account for the true value of the said interest in said partnership, as aforesaid, or to pay or account to plaintiffs for any of the net profits of said business during the time it was conducted by the said Geo. W. Bates, Jr., and William Kennard as trustees as aforesaid, to the plaintiffs' great loss and damage. What part of the proceeds of the sale was paid to the plaintiffs is not stated.

It is averred and admitted that the plaintiff Roy Adams was a minor until November 9, 1921, and that Mabel P. Adams was under the guardianship of Theresa H. Johnson from and after September 12, 1917. The representative character of the defendants and their appointment are admitted; the making and probate of the will are likewise conceded, and the application to the court for leave to sell the interest of the decedent in the partnership property at $7,500 is avowed. It is stated that with the consent of the legatees and in pursuance to the order of the court upon citation issued to the heirs to show cause why the interest of the decedent should not be sold to the defendant at the appraised value of $7,500, that interest was sold and transferred to Kennard.

A more extended history of the transactions in question is given by the answer of Kennard and it is said therein:

"That thereafter, in due course, said executors filed their final account in which transactions with reference to the disposition of the interest of said decedent and said partnership assets were again listed; that said account was published in the manner required by law and no objections were filed thereto on behalf of the guardian of said minor and of said incompetent, or upon behalf of any other interested party, and thereafter the said final account was duly approved by the said County Court of the State of Oregon, Multnomah County, and the said Kennard discharged as executor of said estate and that the said proceedings for the sale of said property and the said final account have been at all times and now are unattacked and final adjudications of the matters therein set forth; that thereafter there was paid to the legatees under the will of Truman L. Adams, deceased, and to the guardian of said incompetent and said minor the sums of money arising from the sale of said partnership in-

terest, and that the said sum was received, receipted for and ever since has been and now is retained.''

That allegation quoted from the answer of Kennard was admitted by the reply of the plaintiffs.

10. Treating of the sale of property by an executor or administrator, Section 1276, Or. L., reads thus:

''The order of confirmation of sale in this chapter mentioned is conclusive as to the regularity of the sale, and no further. All purchases of the property of the estate by an executor or administrator, however made, whether directly or indirectly, are prohibited, and if made are void.''

There is no escape from the true import of this language. It is a universal principle of law that a trustee cannot rightfully be at once a seller and purchaser of the property of *cestui que trust*. There are many apparent exceptions to the rule but the principle is age old that no man can serve two masters. It is patent that to all intents and purposes, in the face of this statute, the plaintiffs have been deprived of their property in a manner condemned as void by the law of the land. The County Court was clearly in error in granting the order allowing the executors to transfer the interest of the decedent in the partnership estate to Kennard at any price whatever, but, as pleaded in the plaintiffs' complaint, the County Court having jurisdiction of the subject-matter and of the parties, made a decision of the issue before it and as a matter of fact, so far as it lawfully could be done, has relinquished jurisdiction of the property involved. Indeed, as shown by the evidence, it is dissipated and scattered beyond all practical means of assembling it again into one custody. As the complaint states, the business was carried on for a considerable period

after the executors were appointed and the testimony discloses that it was conducted as a going concern and the form of the property was changing constantly as any other stock of merchandise would, all as authorized by the will of the decedent.

Cases have been cited to the effect that a trustee who is a part owner of the property, the other moiety of which is the subject of the trust, has the right to buy the trust estate in protection of his own interest. Those precedents are not affected by prohibitive statutes like ours, and are made to depend upon the trustee-purchaser showing the utmost good faith and open dealing with the *cestui que trust* and paying the full value of the property. Aside from the direct and positive inhibition of our statute, the conditions of the cited precedents in the respects mentioned are not prescribed in the instant case, at least as to value of the property.

11, 12. It is possible for the plaintiffs to treat the property as actually transferred from them, howbeit wrongly, and recoup themselves by the recovery of whatever damages they are able to show. The transaction of Kennard of selling to himself the Adams interest in the partnership does not involve the commission of a crime. It is a transaction which might be adopted and ratified by persons *sui juris* without being deemed accessories after the fact in a criminal conspiracy and it would be easy to conceive of many cases where it would be greatly to the interest of the heirs of a deceased partner that the survivor should take the property off their hands. It is manifest from a consideration of the complaint that the plaintiffs do not desire that the stock of general merchandise as described in the testimony should be assembled and their part put into their possession. They are

seeking to be made whole according to a monetary standard. In other words, they desire that the matter shall be reconsidered and that a proper amount of damages shall be allowed to them as compensation, not punishment, for the misfeasance of the defendants.

13. With these considerations in mind, we here insert some excerpts and notes of the testimony and will then state an account between the plaintiffs and the defendant Kennard.

George H. Johnson, uncle and guardian at the time of Mabel Pearl Adams and Royal T. Adams, through his attorney, on June 13, 1918, wrote Kennard as follows:

" * * the reduction of the surplus of $41,291.55, as shown by the inventory of the personal property in the partnership of Kennard and Adams by 50 per cent, was a greater reduction than the actual depreciation of the goods would warrant and that he feels that if the said surplus of $41,291.55 had been reduced by 40 per cent and $5500.00 deducted from that result on account of the lease, the amount thus obtained divided by 2 it would have given very nearly the true value of the interest of said Truman L. Adams in the personal property of said partnership."

R. E. Menefee, one of the appraisers of the estate of Truman L. Adams, testified that he had helped make the inventory and appraisement marked "Plaintiff's Exhibit G," and that, in appraising the value of the merchandise:

" * * we figured from the information furnished as to the cost value, and then considered there was considerable stock that was old and in a measure depreciated. * * I recall clearly we figured the lease as a liability to some extent. The property was paying a large rental, considering the times and the general

condition of business and all; we thought if the partnership or the business was discontinued, they would have considerable of a liability on their hands, considering the character of the store. * * The rental was very high * * as I remember it, there was some sort of an understanding that there would be a loss on the lease of somewhere from $140.00 to $150.00 a month.''

Later, in his testimony, he says:

" * * I judge in liquidating a stock there is bound to be an accumulation of old and depreciated stock, shelf-worn, etc., and that would not bring anyway near the original cost value. Whether we went into those details in that way, I don't pretend to say.''

Here witness thought the probable loss on the lease would be somewhere around $125 or $150 a month. He further testified that none of the appraisers suggested that $26,000 should be deducted as a liability on that lease.

J. F. Birrel, by occupation a banker and experienced in estimating the value of personal property, testified that, in appraising the estate involved, the books showing the merchandise account and containing the inventory taken the first of the year were exhibited to the appraisers. He testified:

" * * We went through the store and Mr. Kennard showed us quite a lot of old stock that had been in there for years. We took that into consideration. And there were some leases on the different stores which were a liability against the Adams estate. * * and had quite a few words *pro* and *con* amongst ourselves * * and we finally got down to the figure.''

He testified that the estate was liable on account of leases, in the sum of $525 per month for one year, and the sum of $600 a month for three years; that, in consideration of the absence of activity in all real

estate in that vicinity, and taking into consideration
the vacant stores in that neighborhood, the loss on
the liability on the leases "would be over a quarter
of what the total amount would be." He testified
that, in the event of liquidation at that time, there
would have been a loss on the leases "absolutely;
because I don't believe anyone could have got the
price for the rooms that they were paying at that
time."

In accounting for the wide margin existing between
the book value and the actual value of the estate, the
witness testified that much of the stock was old,
"which I presume was not worth ten cents on the
dollar. What proportion we valued that stock at, I
can't tell you right offhand, but it was somewhere
between fifty and seventy-five per cent, probably."
In other words, the witness testified, in substance,
that he took the inventory of merchandise and figured
its cash value "at somewhere between fifty and
seventy-five per cent."

H. W. Sitton testified on behalf of the defendant
that he had had fourteen years' experience acting as
receiver, trustee, assignee, and in other capacities
relating to the liquidation of business houses in Port-
land and vicinity. Based on his years of experience,
he testified that in sales of bankrupt stock the amount
realized would "run around from forty to sixty-five
cents."

The plaintiffs have failed to prove that the execu-
tors induced the appraisers to undervalue the prop-
erty of the partnership estate for the benefit of Ken-
nard, or that a fraudulent scheme was worked upon
the court; and there is but little evidence tending to
prove that Kennard misrepresented the condition of
the business to the Adams heirs or their representa-

tive.  The deceit alleged relates to the profits that
were earned by the partnership during the year 1918.
As aptly stated by the trial court in its opinion:

"The evidence shows that a substantial part of this
profit was due to markups of the merchandise and of
the fixtures."

The substantial advance in the price of merchan-
dise was not a secret known to Mr. Kennard alone, but
was common knowledge.  In the matter of liquidating
the Adams estate, the guardian, Geo. H. Johnson, an
expert bookkeeper, a man of good sense, and who
seems to have carefully deliberated upon the subject-
matter, instructed his attorney that the surplus of
$41,291.55, at a fair valuation, should be reduced by
40 per cent and $5,500 deducted from that result on
account of liability under the lease.  This is very
near the figures of the appraisers.

As to the profits realized by the defendant during
the time the store was operated for the estate, we
have the uncontradicted testimony of William Mac-
Rae, a certified public accountant who experted the
books of the concern, who testified thus:

"Now then the profits from January 1, 1918, to
August 24, 1918, was $9348.60.  The loss from August
17, 1917, to December 31, 1917, was $3245.41, making
a net profit from August 17, 1917, to August 24, 1918,
of $6103.14."

Adopting the figures of the guardian as to value
and adding thereto the net profits, as stated above, we
have:

Surplus as shown by inventory............ $41,291.55
Deduct estimated liability on store lease..    5,500.00
                                           _____
      Book value of estate ........... $35,791.55

60% estimated as liquidation value ...... $21,474.93
Add net profit during administra-
    tion ........................$6,103.14
Less income tax estimated ....... 2,000.00   4,103.14

Net value of estate..................... $25,578.07
One half to Adams' share ............,..... $12,789.03
Deduct sum already paid by Kennard.... 7,500.00

    Net amount due to plaintiffs..........$ 5,289.03

    For this net amount a decree is entered in favor of the plaintiffs and against the defendant Kennard. The decree of the Circuit Court is modified accordingly.    MODIFIED.  REHEARING DENIED.